DERRY STREET PUB,
INC., Appellant

v.

PENNSYLVANIA STATE POLICE,
BUREAU OF LIQUOR CONTROL
ENFORCEMENT.

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 2014.
Decided March 24, 2015.

James W. Kollas, Camp Hill, for appellant.

John H. Pietrzak, Assistant Counsel, Harrisburg, for appellee.

BEFORE: MARY HANNAH LEAVITT, Judge, and PATRICIA A. McCULLOUGH, Judge, and ROCHELLE S. FRIEDMAN, Senior Judge.

OPINION BY Judge McCULLOUGH.

Derry Street Pub, Inc. (Licensee) appeals from the February 5, 2014 order of the Court of Common Pleas of Dauphin County (trial court) that dismissed Licensee's appeal from the July 24, 2013 order and decision of the Pennsylvania Liquor Control Board (Board). The Board's order reversed the decision and order of an administrative law judge (ALJ) insofar as it held that a conditional licensing agreement (CLA) was no longer in effect at the time of Licensee's alleged violation of its provisions.

### Facts and Procedural History

Licensee is a restaurant and pub located at 2312 Derry Street, Harrisburg, Pennsylvania, and is the holder of a restaurant liquor license number R–12671. By letter dated February 18, 2010, the Board's Bureau of Licensing objected to the renewal of Licensee's liquor license for the licensing term effective March 1, 2010, due to violations of the Liquor Code,[1] improper conduct, and the late filing of Licensee's renewal application. (Reproduced Record (R.R.) at 4a–5a.) The CLA describes the Bureau of Licensing's reasoning as follows:

> By letter dated February 18, 2010, [Bureau of] Licensing objected to the renewal of the liquor license for the licensing term effective March 1, 2010 based upon approximately forty-five (45) incidents of disturbance at or immediately adjacent to the licensed premises, one (1) adjudicated citation, and because the application was late-filed. The incidents included, but were not limited to shootings, fights, assaults, disorderly op-

---

1. Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. §§ 1–101–10–1001.

erations, drugs and loud music. In addition, [Bureau of] Licensing objected to the renewal of the amusement permit based upon approximately twenty-five (25) incidents of loud music, and the aforementioned adjudicated citation.

(R.R. at 16a.) The February 18, 2010 letter also provided that a hearing would be held to determine whether the violations and improper conduct warranted non-renewal of Licensee's liquor license. (R.R. at 4a.)

After a hearing, the Board denied renewal of the liquor license. Licensee appealed to the trial court. Subsequently, in order to secure its liquor license renewal, Licensee entered into a CLA with the Board, effective December 6, 2011, under which the parties agreed to additional restrictions on the license and the premises as set forth therein, and the Board approved the renewal of Licensee's liquor license for the two-year licensing period beginning March 1, 2010. (ALJ's Finding of Fact No. 3; Board's op. at 2–3; R.R. at 9a–10a, 15a–23a.)

Generally, the CLA's restrictions require Licensee to comply with the Responsible Alcohol Management provisions in the Liquor Code; employ one security guard on Sunday through Thursday nights and two security guards on Friday and Saturday nights; patrol the exterior premises at night; initiate and attend semiannual meetings with the Harrisburg Police Department; maintain and enforce a written barred patrons list; maintain surveillance cameras on the premises; use transaction scan devices; prohibit patrons from entering the premises with weapons; and prohibit amplified music after 11:30 p.m. on Friday and Saturday nights and after 10:00 p.m. on all other nights. (R.R. at 17a–20a.) Paragraph 10 of the CLA states as follows:

These terms shall remain in effect both on the license and on the premises unless and until a subsequent agreement is reached with the Board rescinding these restrictions. [Licensee] shall not be prohibited from seeking modification or rescission of this Agreement, but any such modification or rescission shall be at the sole discretion of the Board.

(R.R. at 22a) (emphasis added). The Bureau of Licensing confirmed this language in its December 8, 2011 letter to Licensee notifying Licensee that the Board approved the CLA as follows: "It is further understood that the conditions outlined in the [CLA] will remain in effect both on the license and on the location unless and until a subsequent agreement is reached with the [Board] rescinding the restrictions." (R.R. at 26a.) Licensee withdrew its appeal to the trial court. (Board's op. at 3)

Subsequently, on February 13, 2012, the Board notified Licensee by letter and corresponding order that it objected to the renewal of Licensee's liquor license for the licensing period beginning March 1, 2012, based upon violations of the Liquor Code relative to two separate citations and improper conduct related to seventeen instances of disturbance from June 2010 until February 2012 that included homicide, assaults, loud music, and disorderly conduct. The Board granted temporary authority for Licensee to continue operating prior to the scheduling of a hearing.

On March 30, 2012, a hearing examiner held a hearing on the issue of Licensee's license renewal. By order dated June 13, 2012, the Board refused to renew Licensee's liquor license for the licensing period beginning March 1, 2012, and rescinded Licensee's temporary authority. Licensee appealed to the trial court. By opinion and order dated January 8, 2013, the trial court reversed the Board's June 13, 2012 order, and granted the liquor license re-

newal. (Trial court op. at 1–2; R.R. at 28a.) No appeal was taken.

In a separate matter, the Pennsylvania State Police, Bureau of Liquor Control Enforcement (Bureau) commenced an investigation of Licensee regarding new violations on December 19, 2011. During the investigation, the Bureau conducted twelve visits to the licensed premises. On ten of those visits, no violations were found. However, on February 17, 2012, an undercover Bureau enforcement officer entered the Licensee's premises at 11:00 p.m. without being required to show any identification. The enforcement officer purchased an alcoholic beverage. On July 15, 2012, an undercover Bureau enforcement officer entered the premises at 10:40 p.m. without being questioned as to age and without undergoing a metal detection device search. The enforcement officer purchased an alcoholic beverage. The enforcement officer remained at the premises from 10:40 p.m. to 11:50 p.m., and Licensee provided amplified music the entire time. The Bureau completed its investigation of Licensee on August 17, 2012, and sent a notice to Licensee at the Licensee's premises by certified mail, return receipt requested, on August 28, 2012, that Licensee had violated the CLA by failing to adhere to the agreed upon additional restrictions. (ALJ's Findings of Fact Nos. 1–2, 4–6a, 6c; R.R. at 34a.)

On September 13, 2012, the Board issued a citation against Licensee that contained one count as follows:

> On February 17 and July 15, 2012, you, by your servants, agents or employees, failed to adhere to the conditions of the agreement entered into with the Board placing additional restrictions upon the subject license, in violation of Section 404 of the Liquor Code, 47 P.S. § 4–404.[2]

(R.R. at 35a.) The citation stated Licensee would be scheduled to appear before an ALJ, unless Licensee waived the hearing. (R.R. at 36a.) After a hearing on February 27, 2013, regarding the Board's September 13, 2012 citation, the ALJ concluded as follows:

> 3. The three legal conclusions which follow independently mandate dismissal.
>
> a. The CLA's effective term ended on February 29, 2012, by agreement of the parties [in the CLA].
>
> b. Alternatively, the statutory *supersedeas* provided for in Liquor Code Section 464 [47 P.S. § 4–464] [3] prevails over the CLA.
>
> c. Alternatively, by operation of law, a license renewal CLA expires at the end of the licensing term for which it was issued.

(ALJ's Conclusion of Law No. 3a–c.)

The ALJ stated that, under relevant principles of law, the CLA only applied to the two-year licensing period beginning on March 1, 2010, and its terms cannot be extended beyond that licensing period. Thus, the ALJ concluded that the CLA terminated on February 29, 2012. The ALJ also concluded that, pursuant to section 464 of the Liquor Code, a *supersedeas* of the Board's June 13, 2012 order denying Licensee's liquor license renewal was in place when the July 15, 2012 violation occurred, because Licensee had appealed from the Board's decision denying its license renewal for the two-year licensing

---

2. Section 404 provides in relevant part that the failure of a liquor license applicant to adhere to the terms of a CLA will be sufficient cause for a citation and non-renewal of a liquor license.

3. Section 464 of the Liquor Code provides that an appeal of a Board's decision regarding a liquor license application, renewal, or transfer shall act as a *supersedeas* for the order granting or denying the liquor license application, renewal, or transfer.

period beginning on March 1, 2012. Thus, the ALJ determined that the CLA was not in effect at that time.

Lastly, citing statutory construction principles, the ALJ concluded that section 470 of the Liquor Code [4] contains no provisions allowing for an extension of a CLA beyond a two-year licensing period. The ALJ noted that, in contrast, section 404 of the Liquor Code provides that a CLA already in place may remain in effect at the same *location* beyond the two-year licensing period if a license is transferred to a new holder. Thus, the ALJ affirmed the citation as to the February 17, 2012 violation, finding that the CLA was still in effect during that two-year licensing period, but dismissed the citation as to the July 15, 2012 violation, and imposed a $50.00 fine.

The Bureau appealed to the Board regarding the ALJ's dismissal of the citation as to the July 15, 2012 violation. In its July 24, 2013 decision, the Board first determined that the CLA did not terminate under its own terms, noting that the CLA unambiguously provides that its terms "shall remain in effect both on the license and on the premises unless and until a subsequent agreement is reached with the Board rescinding these restrictions." (R.R. at 22a.) Thus, the Board concluded that the ALJ erred and abused his discretion in determining that the CLA had expired upon agreement of the parties. The Board also stated that a statutory *supersedeas* returns a licensee to the operating status immediately prior to the Board's decision on license renewal. The Board concluded that Licensee was operating under the CLA immediately prior to the Board's 2012 non-renewal determination and that the ALJ erred and abused his discretion in determining otherwise.

Further, citing section 1922(5) of the Statutory Construction Act, 1 Pa.C.S. § 1922(5), the Board noted that statutes are to be read in favor of the public interest and, citing *In re Application of El Rancho Grande, Inc.*, 496 Pa. 496, 437 A.2d 1150 (1981), that the Liquor Code is to be read to restrain, not promote, the sale of alcohol. In considering these principles, the Board determined that there is no language in the Liquor Code that requires a CLA to terminate at the end of a two-year licensing period. Thus, the Board determined that the ALJ erred and abused his discretion in concluding that the CLA terminated by operation of law.

Lastly, the Board determined that the trial court's January 8, 2013 order reversing the Board's non-renewal decision did not invalidate the CLA, because the trial court was not asked to do so. The Board remanded to the ALJ in order for him to impose an additional penalty, if so warranted, and sustained the Bureau's appeal as to the July 15, 2012 violation date, holding that the ALJ committed an error of law and abused his discretion in finding that the CLA expired or was otherwise not in effect as of July 15, 2012, and that his decision was not supported by substantial evidence.

Licensee appealed to the trial court, which heard the appeal *de novo*.[5] The trial court first determined that, although the citation improperly referenced section 404 instead of section 471 of the Liquor Code,[6] the "citation clearly indicates that the violations were of the CLA." (Trial court op. at 7.) Thus, the trial court con-

---

4. 47 P.S. § 4–470.

5. Section 464 of the Liquor Code provides that the trial court shall hear the appeal *de novo*.

6. 47 P.S. § 4–471. Section 471 provides the Bureau with the authority to issue citations and authorizes an ALJ to impose a fine and/or revoke or suspend a liquor license when a citation has been issued by the Bureau.

cluded that all of the due process requirements were fulfilled. The trial court next noted that there is no language in the Liquor Code or the CLA that provides a time limit for a CLA, and, thus, the trial court concluded that the CLA remains in effect until a subsequent agreement is reached with the Board and that "the grant of temporary authority merely allows [Licensee] to operate under its current license and any restrictions on that license during the hearing appeal process." (Trial court op. at 8.) The trial court also concluded that the statutory *supersedeas* in place after Licensee appealed the Board's non-renewal decision did not terminate the CLA, because the *supersedeas* maintained Licensee's legal status as it existed prior to the non-renewal, which included the CLA restrictions.

Citing sections 104(a) and 207 of the Liquor Code,[7] the trial court stated that the Legislature constitutionally delegated the authority to the Board to enter into CLAs that last longer than the two-year licensing periods. The trial court concluded that section 470 of the Liquor Code renders a CLA binding on an applicant, and, therefore, the CLA in this case did not terminate after the two-year licensing period expired. Lastly, the trial court concluded that its order granting renewal of Licensee's liquor license effective March 1, 2012, did not terminate the CLA, because "the CLA is not separate from the license, but rather is made a part of it. In granting the renewal of the license, we granted renewal with the additional restrictions on it." (Trial court op. at 11.) Accordingly, by order dated February 5, 2014, the trial court dismissed Licensee's appeal.

7. 47 P.S. §§ 1–104(a), 2–207.

8. Our scope of review in a Liquor Code enforcement appeal is limited to determining whether the trial court committed an error of

## Discussion

On appeal to this Court,[8] Licensee argues that the trial court abused its discretion or committed an error of law as follows: (1) in holding that the citation was valid even though it improperly cited section 404 instead of section 471 of the Liquor Code; (2) in holding that the CLA had not been canceled, terminated, or otherwise repudiated by the Board; (3) in failing to find that the CLA scheme is an unconstitutional delegation of legislative power in violation of due process principles; and (4) in holding that a prior order of the trial court granted renewal of the liquor license under burden of the CLA.

## Validity of the September 13, 2012 Citation

 Licensee first contends that the trial court erred in failing to recognize that the September 13, 2012 citation is invalid because it improperly cited section 404 instead of section 471 of the Liquor Code. Section 404 of the Liquor Code, which governs the issuance, transfer, or extension of liquor licenses to applicants, provides in relevant part:

The board may enter into an agreement with the applicant concerning additional restrictions on the license in question. If the board and the applicant enter into such an agreement, such agreement shall be binding on the applicant. Failure by the applicant to adhere to the agreement will be sufficient cause to form the basis for a citation under section 471 and for the nonrenewal of the license under section 470. If the board enters into an agreement with an applicant concerning additional restrictions, those restrictions shall be binding on

law or an abuse of discretion. *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Wilner*, 687 A.2d 1216, 1218 n. 4 (Pa.Cmwlth.1997).

subsequent holders of the license until the license is transferred to a new location or until the board enters into a subsequent agreement removing those restrictions.

47 P.S. § 4–404. Although Licensee argues that the citation should have referenced section 471, Licensee also correctly argues that the basis for a citation under section 471 is found in section 470(a) of the Liquor Code, which concerns the renewal of liquor licenses. Section 470(a) of the Liquor Code, which governs the renewal of liquor licenses like the present situation, provides in pertinent part:

> The board may enter into an agreement with the applicant concerning additional restrictions on the license in question. If the board and the applicant enter into such an agreement, such agreement shall be binding on the applicant. Failure by the applicant to adhere to the agreement will be sufficient cause to form the basis for a citation under section 471 and for the nonrenewal of the license under this section.

47 P.S. § 4–470(a). Thus, the citation should have cited both sections 470(a) and 471 of the Liquor Code.

■ Due process is equally applicable to administrative proceedings as it is to judicial proceedings. *Pittsburgh Press Company v. Pittsburgh Commission on Human Relations*, 4 Pa.Cmwlth. 448, 287 A.2d 161, 165–66 (1972). However, due process notice requirements are fulfilled when the licensee is informed of the type and the date of the alleged violation. *Pennsylvania Liquor Control Board v. Reda*, 76 Pa.Cmwlth. 76, 463 A.2d 108, 109 (1983).

In *Reda*, liquor license holders received a citation from the Board stating that they maintained their establishment "in an insanitary condition on or about July 25, 1981, and on divers [sic] other occasions within the past year." *Id.* After a hearing,

the Board suspended the licensees' liquor license and the licensees appealed to the common pleas court, arguing that the citation lacked specificity and violated due process notice requirements. The common pleas court reversed the Board's order, holding that the citation lacked specificity sufficient to provide notice of the violation.

On appeal to this Court, we noted that due process notice requirements are satisfied when a citation states the type and date of the alleged violation and that the "Board is given wide latitude in the generality of its charges." *Id.* Thus, we determined that, because the citation stated the type of violation and the date that it occurred, the citation was sufficiently specific to fulfill due process notice requirements, and remanded for a decision on the merits.

Similar to the situation in *Reda*, the citation in this case states the types of violations, in that Licensee did not adhere to the terms of the CLA, and the dates of the violations, February 17 and July 15, 2012. Although the Board referenced section 404 instead of sections 470(a) and 471 of the Liquor Code, Licensee was nonetheless adequately informed of the specific alleged violations. Thus, we conclude that the Board provided Licensee with sufficient notice of the alleged violations for purposes of due process. *Reda.*

Licensee's reliance on *Pennsylvania Liquor Control Board v. Camiel's Beverage Company*, 7 Pa.Cmwlth. 654, 300 A.2d 834 (1973), is misplaced, because the facts of *Camiel's* are distinguishable from those presented here. In *Camiel's*, the Board imposed a fine upon the licensee, vaguely setting forth charges and the reasons for the charges in its brief opinion. The licensee appealed, and the common pleas court remanded the case to the Board in order for the Board to provide more specific charges.

The Board appealed to this Court, which determined that neither the citation nor the Board's opinion contained language that was sufficiently specific to fulfill due process notice requirements and affirmed the trial court's order. We noted that the Board could have issued findings in its opinion specifying the reasoning for the citations but failed to do so. Although we stated that we were mindful "of the wide latitude given the [Board] in the [generality] of its charges[,]" *id.* at 836, we held that the trial court was entitled to seek assistance from the Board in the form of more specific charges before the trial court proceeded with a *de novo* hearing.

In contrast to the circumstances in *Camiel's,* in this case the Board provided Licensee with a citation that states both the type and the date of the alleged violations. Moreover, the Board's opinion thoroughly analyzes each of the ALJ's conclusions of law and provides legal support for reversal, thereby providing the trial court with an adequate basis upon which to conduct the *de novo* hearing. Accordingly, we conclude that the trial court did not err or abuse its discretion in determining that the Board's citation fulfilled the due process notice requirements.[9]

### Duration of the CLA

■ Next, Licensee contends that the trial court erred in holding that the Board had not canceled, terminated, or otherwise repudiated the CLA by way of the Board's February 13, 2012 letter and corresponding order objecting to renewal of Licensee's liquor license for the period beginning March 1, 2012. The letter stated as follows:

This is to advise that a preliminary review of your history of operation and/or citation record may indicate abuse of the licensing privilege. As such, a hearing shall be held to determine whether the following objections constitute egregious activity warranting non-renewal of your license for the license period effective March 1, 2012.

It is alleged that you have abused your licensing privilege, and pursuant to Section 470 of the Liquor Code (47 P.S. Section 4–470), you may no longer be eligible to hold a license based upon:

a) violations of the Liquor Code relative to Citation Numbers 10–1215 and 09–1762.

b) The improper conduct of your licensed establishment as there have been approximately seventeen (17) incidents of disturbances at or immediately adjacent to your licensed establishment during the time period June 2010 to present reported to the Harrisburg City Police Department. This activity includes but is not limited to homicide, assaults, loud music, and disorderly operations.

You will be contacted at a later date concerning the scheduling of a hearing. For your information, we are enclosing copies of Section 464 of the Pennsylvania Liquor Code (47 P.S. Section 4–464) and Section 3.41 of the Board's Regulations (40 Pa.Code Section 3.41) pertaining to hearings.

In 2010 the Bureau of Licensing objected to the renewal of your license. This objection resulted in a [CLA] be-

---

9. Licensee also equates the Liquor Code to a criminal statute and asserts that its Sixth Amendment criminal due process rights have been violated. However, Licensee did not raise this argument in the proceedings below, and, thus, it is waived on appeal. Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

tween you, the licensee, and our Chief Counsel's office which was approved by the Board on December 6, 2011.

In the interim, enclosed you will find temporary authority to operate. The temporary authority begins March 1, 2012 and will continue during the administrative hearing process.

Your license fees submitted with the application will be processed following conclusion of this case. Failure to submit appropriate license fees to the Board shall constitute further objection to the renewal of your license.

(R.R. at 28a–29a.) The corresponding order states:

Now this 13th day of February, 2012, the Bureau of Licensing grants temporary authority to operate effective March 1, 2012 under Restaurant Liquor License No. R–12671 to provide amusement, to sell on Sundays during the hours provided by law, to serve food between the hours of 2:00 a.m. and 7:00 a.m., and to purchase liquor at a discount at a Pennsylvania Wine & Spirits Store during the administrative hearing process on the question of the renewal or non-renewal of the license. Unless suspended or revoked, and provided the licensee continues to operate as a bona fide restaurant under the provisions of the Liquor Code, this authority shall end at the *earlier* of the following: (1) 11:59 p.m. on the Licensee's next operating day after the Board's adjudication in this matter is delivered to the office of the Licensee's attorney-of-record; (2) upon approval of a [CLA]; or (3) February 28, 2013.

(R.R. at 30a) (alteration in original).

Contrary to Licensee's argument, while neither the letter nor the order specifically states that the CLA remains in effect, the letter and the order do not repudiate the CLA. In fact, the Board's reference in the letter to Licensee's temporary authority to operate immediately after its discussion that the CLA restricts Licensee's liquor license demonstrates the Board's intent to keep Licensee's liquor license in line with the CLA.

Licensee relies on *Allegheny Energy Supply Company v. Wolf Run Mining Company*, 53 A.3d 53 (Pa.Super.2012), for the proposition that the Board repudiated its contract, the CLA, with Licensee. However, Licensee's reliance is misplaced. In *Allegheny Energy*, an energy company entered into a contract agreeing to purchase all coal from a mining company. Due to an accidental breach of an abandoned gas well, changes in the enforcement of regulations for mining, and a collapsing mine roof, the coal company invoked the *force majeure* clause in the contract in order to avoid a breach. The energy company instituted a breach of contract claim against the coal company, and the trial court found in favor of the energy company, determining that the *force majeure* clause did not apply and awarding the energy company past and future damages.

The coal company appealed to our Superior Court, which concluded, in relevant part, that the trial court erred in setting the date of the coal company's repudiation as the day of trial and not the date when the energy company was aware of the repudiation for the purposes of awarding future damages. As our Superior Court stated:

In order to constitute a repudiation, a party's language must be sufficiently positive to be reasonably interpreted to mean that the party will not or cannot perform. Mere expression of doubt as to his willingness or ability to perform is not enough to constitute a repudiation, although such an expression may give an obligee reasonable grounds to believe that the obligor will commit a serious breach and may ultimately result in a

repudiation.... However, language that under a fair reading "amounts to a statement of intention not to perform except on conditions which go beyond the contract" constitutes a repudiation. *Id.* at 64–65 (internal citation and quotations omitted). Thus, the Superior Court vacated the award of future damages in order for that award to be calculated at the time of repudiation, the time when the coal company could no longer perform its obligations in the contract.

In this case, unlike the situation in *Allegheny Energy,* the Board is not engaged in a sale of goods with Licensee nor did the Board give any indication that it is incapable of performing its part of the contract with Licensee. The Board also did not give any indication that it repudiated the CLA in accordance with the process for termination found in paragraph 10 of the CLA, which states as follows:

These terms shall remain in effect both on the license and on the premises **unless and until a subsequent agreement is reached with the Board rescinding these restrictions.** [Licensee] shall not be prohibited from seeking modification or rescission of this [CLA], but any such modification or rescission shall be at the sole discretion of the Board.

(R.R. at 22a) (emphasis added).

The Board did not rescind the CLA in either its February 13, 2012 letter or order. According to its plain language, which mirrors the language of section 470(a) of the Liquor Code giving the Board authority to enter into an agreement with an applicant, the CLA only terminates upon a new agreement or upon a grant of rescission by the Board. Neither occurred here. The Board did not grant a rescission or enter into a new CLA through its letter or order. As the trial court stated:

The language of the CLA and the statute are clear. *The terms of the CLA remain in effect and are binding until a subsequent agreement is reached with the Board.* The CLA is not a temporary license, it is not a new license, it is "an agreement concerning *additional restrictions on the license* in question[.]" 47 P.S. § 4–470 (emphasis added). The grant of temporary authority merely allows [Licensee] to operate under its current license and any restrictions of that license during the hearing process.

(Trial court op. at 8) (emphasis added). We interpret the CLA's express language to mean that it remains in effect unless and until a subsequent agreement or a grant of rescission by the Board, and we find no basis to interpret it otherwise. Thus, the trial court did not err in concluding that the CLA remained in effect on the July 15, 2012 violation date.[10]

### Delegation of Legislative Power

██ Licensee also asserts that the statutory scheme allowing the Board to enact CLAs constitutes an unconstitutional delegation of legislative power in violation of due process principles. There is a strong presumption that legislative enactments do not violate our Constitution, *Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth,* 583 Pa. 275, 877 A.2d 383, 393 (2005), and a

---

10. Licensee also argues that the Board's June 13, 2012 order denying liquor license renewal and the statutory *supersedeas* in place upon appeal of the Board's decision invalidated the CLA and that it was not in effect on July 15, 2012. As discussed above, the CLA only terminates upon a subsequent agreement or a grant of rescission by the Board, and, thus, the trial court properly determined that the license non-renewal determination and the *supersedeas* did not invalidate the CLA. Moreover, it would be an absurd result if a *supersedeas* placed a licensee in a better position than the licensee was in when it was operating under the CLA's restrictions prior to the liquor license non-renewal determination.

party challenging a statute's constitutionality "bears a very heavy burden of persuasion to overcome this presumption." *MCT Transportation Inc. v. Philadelphia Parking Authority*, 60 A.3d 899, 904 (Pa. Cmwlth.2013) (citation and quotations omitted). "Therefore, a statute will not be declared unconstitutional unless it *clearly, palpably*, and *plainly* violates the Constitution." *Id.* (alteration in original) (citation and quotations omitted).

Legislative power is vested in the Legislature pursuant to Article II, Section 1 of the Pennsylvania Constitution. PA. CONST. art. II, § 1 ("The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives."). Legislative power is the power to make law, and, thus, the Legislature "cannot constitutionally delegate the power to make law to any ... other body or authority." *Blackwell v. State Ethics Commission*, 523 Pa. 347, 567 A.2d 630, 636 (1989) (holding that section 4(4) of the Sunset Act of 1981,[11] authorizing a leadership committee to postpone the termination of a Commonwealth agency, was an unconstitutional delegation of legislative power conferring upon the leadership committee the ability to make a basic policy choice of whether a Commonwealth agency remained in existence).

 Basic policy choices must be made by the Legislature, but it can **"impose upon others the duty to carry out the declared legislative policy in accordance with the general provisions"** of the statute. *Chartiers Valley Joint Schools v. County Board of School Directors of Alle-*

*gheny County*, 418 Pa. 520, 211 A.2d 487, 492 (1965) (emphasis added) (citation and quotations omitted) (holding that sections 291, 292, and 293 of the School Reorganization Act of 1963,[12] providing the Board of Education with reorganizing powers, did not unconstitutionally delegate legislative power, because the Legislature provided the Board of Education with adequate guidelines for effectuating the Act). "When conferring power on an agency to decide the facts and apply the law to a particular situation, the legislature must establish the standards for exercising that power." *Washington v. Department of Public Welfare*, 71 A.3d 1070, 1088 (Pa. Cmwlth.2013) (holding that sections 1402–B, 1405–B(c), and 1406–B(b) of the Public Welfare Code[13] unconstitutionally delegated legislative power, because the Legislature did not provide the Department of Public Welfare with an adequate standard to select counties eligible for a block grant program and to waive certain statutory requirements); *see also Bell Telephone Company of Pennsylvania v. Driscoll*, 343 Pa. 109, 21 A.2d 912, 915–16 (1941) (holding that a statute requiring the Public Utility Commission to approve all contracts between a public utility and an affiliated interest in order for the contract to be valid was an unconstitutional delegation of legislative power, because there was not an adequate standard in the statute for the Commission to use in determining which contracts were in the public's interest, a basic policy choice reserved for the Legislature).

Similar to the circumstances found in *Blackwell, Chartiers Valley Joint Schools,*

---

**11.** Act of December 22, 1981, P.L. 508, *as amended*, 71 P.S. § 1795.4(4). This act expired on December 22, 1991, pursuant to section 14 of the Sunset Act of 1981, 71 P.S. § 1795.14.

**12.** Public School Code of March 10, 1949, P.L. 30, added by the Act of August 8, 1963,

P.L. 564, 24 P.S. §§ 2–291–2–293 (Supp. 1964).

**13.** Act of June 13, 1967, P.L. 31, added by the Act of June 30, 2012, P.L. 668, *as amended*, 62 P.S. §§ 1402–B, 1405–B(c), 1406–B(b).

*Washington,* and *Bell Telephone,* the Legislature must provide adequate standards for the Board to enter into CLAs with licensees so that there is not an unconstitutional delegation of legislative authority. In other words, the basis for restrictions listed in the CLA must be found in the Liquor Code. In accordance with the purpose of the Liquor Code to restrain the sale of alcohol, 47 P.S. § 1–104(c); *Pittsburgh Stadium Concessions, Inc. v. Pennsylvania Liquor Control Board,* 674 A.2d 334, 336 (Pa.Cmwlth.1996) ("[T]he purpose of the Liquor Code is not to promote the sale of liquor, rather it is to regulate and restrain the sale of liquor."), the Legislature made the basic policy choice to allow licensees to enter into CLAs in order to continue the operation of their businesses, and has merely imposed upon the Board the duty to carry out this legislative policy in accordance with the general provisions of the Liquor Code. *Chartiers Valley Joint Schools.*

It is well settled that the Board may revoke a licensee's liquor license because of conduct that violates the Liquor Code, is illegal, and is detrimental to the public's safety. 47 P.S. § 1–104(a) ("This act shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals...."); *Paey Associates, Inc. v. Pennsylvania Liquor Control Board,* 78 A.3d 1187 (Pa.Cmwlth.2013) (affirming the Board's decision not to renew a licensee's liquor license because of, in pertinent part, a pattern of illegal activity that included public drunkenness, assaults, fights, intoxicated minors, and unconscious patrons); *Philly International Bar, Inc. v. Pennsylvania Liquor Control Board,* 973 A.2d 1 (Pa.Cmwlth.2008) (holding that evidence of drug activity on the licensed premises constituted substantial evidence for the Board

to refuse the renewal of the licensee's liquor license); *Hyland Enterprises, Inc. v. Pennsylvania Liquor Control Board,* 158 Pa.Cmwlth. 283, 631 A.2d 789 (1993) (upholding the Board's denial of the licensee's liquor license renewal application due to the licensee violating the Liquor Code by selling liquor to minors); *Matter of Restaurant Liquor License No. R–18291,* 46 Pa.Cmwlth. 537, 408 A.2d 164 (1979) (holding that the Board's revocation of a licensee's liquor license for permitting dancing and entertainment in the licensed establishment after the hours permitted for the sale of liquor or brewed beverages and for operating the licensed premises in a noisy and disorderly manner was proper). In the interest of protecting the public, the Legislature has given the Board the authority to enter into CLAs with a licensee so that the licensee can maintain the liquor license in a safe and peaceful manner.

In this case, section 470(a) of the Liquor Code provides the Board with authority to enter into CLAs for the renewal of liquor licenses as follows:

> The board may enter into an agreement with the applicant concerning additional restrictions on the license in question. If the board and the applicant enter into such an agreement, *such agreement shall be binding on the applicant.* Failure by the applicant to adhere to the agreement will be sufficient cause to form the basis for a citation under section 471 and for the nonrenewal of the license under this section.

47 P.S. § 4–470(a) (emphasis added). Specifically, the Board and Licensee agreed to the following restrictions on Licensee's liquor license. Paragraph 8a of the CLA requires the Licensee to adhere to the Responsible Alcohol Management provisions, including the necessary training for employees, managers, and owners, found in section 471.1 of the Liquor Code.[14] Para-

---

**14.** Added by the Act of Dec. 20, 2000, P.L. 993, *as amended,* 47 P.S. § 4–471.1.

graphs 8b-e, g, and i-k also make specific references to the Liquor Code regarding closing times, business records, amplified music, and defined terms. Section 406 of the Liquor Code, 47 P.S. § 4–406 (discussing allowable times when liquor may be sold); section 493(12), (34) of the Liquor Code, 47 P.S. § 4–493(12), (34) (discussing business records and restrictions on amplified music); section 495 of the Liquor Code, 47 P.S. § 4–495 (defining a "transaction scan device" as "a device capable of deciphering in an electronically readable format the information encoded on the magnetic strip or bar code of an identification card set forth in subsection (a)").

In paragraphs 8b–i of the CLA, based upon prior infractions, the Board requires Licensee to: employ one security guard during the hours of 8:00 p.m. until one-half hour after the time when the patrons are required to vacate the premises on Sunday through Thursday nights, and employ two security guards on Friday and Saturday nights during the hours of 8:00 p.m. until one-half hour after the time when all patrons are required to vacate the premises; patrol the exterior premises at least once per hour every night of operation from 9:00 p.m. until one-half hour after the time when all patrons are required to vacate the premises; initiate and attend semiannual meetings with the Harrisburg Police Department to discuss safety measures; maintain and enforce a written barred patrons list on the licensed premises; maintain at least twenty-three surveillance cameras of the interior and exterior of the licensed premises; scan every patron purchasing alcohol with a transaction scan device, as that term is defined in the Liquor Code, regardless of whether the patron had been previously scanned; prohibit patrons from entering the premises with weapons; scan all patrons with a metal detecting wand from 9:00 p.m. until closing; and prohibit amplified music after 11:30 p.m. on Friday and Saturday nights

and after 10:00 p.m. on all other nights. (R.R. at 17a–20a.)

In addition, paragraph 8j of the CLA provides that two or more adjudicated citations for allowing amplified music to be heard outside of the licensed premises within a two-year licensing period constitutes a violation of the CLA. The CLA defines the terms "adjudication" and "adjudicated" as "the issuance, after the effective date of this [CLA], of a decision and order by the Office of the [ALJ] or any tribunal affirming the citations without respect of any appeals of such adjudication[.]" (R.R. at 20a.) Paragraph 8k states that two or more substantiated instances of amplified music heard outside of the premises within a given two-year licensing period is a violation of the CLA. The phrase "substantiated instances" is defined by the CLA as "occasions where the local police advised [Licensee] to decrease the volume of amplified sound emanating from the licensed premises[.]" (R.R. at 21a.)

Here, the Board had already applied the law to the facts in this case when it revoked Licensee's liquor license and objected to the Licensee's liquor license renewal because there had been approximately forty-five incidents of disturbances, including shootings, fights, assaults, disorderly operations, and drugs, and approximately twenty-five incidents of loud music at Licensee's licensed establishment from June 2008 until the date of the letter. (R.R. at 4a–5a.) Licensee filed an appeal but then chose to withdraw its appeal; opting instead to enter into a CLA with the Board to preserve its license.

By withdrawing its appeal, entering into the CLA, and not contesting the facts found in the Board's February 18, 2010 letter, which objected to the Licensee's liquor license renewal, Licensee admitted that the improper conduct had occurred at

the licensed premises. The CLA entered into by Licensee and the Board addressed the very conduct and infractions for which Licensee had been cited. To the extent there are any requirements in the CLA not specifically found in the Liquor Code, they are nonetheless based upon the infractions by Licensee of the Liquor Code's provisions.

Licensee, in order to renew its liquor license, voluntarily entered into the CLA to avoid the Board's revocation of same. The Board, in the CLA, provided the additional restrictions which it determined necessary under the Liquor Code to protect the public in light of the numerous violations of the Liquor Code by Licensee. The Board's standards were guided by the standards set forth in the Liquor Code permitting voluntary CLAs and additional restrictions which the Board deems necessary in light of Licensee's infractions and a revoked liquor license.

■ Licensee's suggestion that authorizing state agencies to enter into CLAs is in itself an unconstitutional delegation of legislative power is a self-serving argument. A liquor license is "a purely personal privilege for a specific limited time," subject to revocation by the Board for cause. *Pichler v. Snavely*, 366 Pa. 568, 79 A.2d 227, 228 (1951). Because the purpose of the Liquor Code is to restrain the sale of alcohol, 47 P.S. § 1–104(c); *Pittsburgh Stadium Concessions*, and the grant of authority to enter into agreements "concerning additional restrictions on the license," 47 P.S. § 4–470(a), is consistent with the purpose of the Liquor Code and is a voluntary means for licensees that otherwise would be subject to revocation of their liquor licenses, the CLA scheme is not an improper delegation of legislative power.

Notwithstanding the above, a CLA is a voluntary agreement between a licensee and the Board. In accordance with section 470(a) of the Liquor Code, "[t]he board may enter into an *agreement* with the applicant concerning additional restrictions on the license in question." 47 P.S. § 4–470(a) (emphasis added). Licensee and the Board voluntarily entered into the CLA so that Licensee could renew its liquor license without having to appear before the trial court. In the CLA, Licensee asserted that adherence to the CLA's conditions would alleviate any problems associated with the licensed premises. (R.R. at 16a.) Moreover, Licensee agreed in the CLA that its provisions are binding on its license and on its premises until Licensee and the Board reach a subsequent agreement rescinding the restrictions. (R.R. at 22a.)

■ Because a CLA is a *voluntary* agreement entered into by both the Board and the licensee, a CLA is a contract between the parties akin to a consent decree. "A consent decree is not a legal determination by the court of the matters in controversy but is merely an agreement between the parties. It is in essence a contract binding the parties thereto." *Commonwealth by Creamer v. Rozman*, 10 Pa.Cmwlth. 133, 309 A.2d 197, 199 (1973). In *Rozman*, the Rozmans entered into a consent decree with the Commonwealth for an injunction to prevent unfair trade practices. The Rozmans subsequently filed a petition to dissolve the permanent injunction and to vacate the consent decree with this Court. We stated that:

> It would be an untenable situation if [the] Rozmans could agree to the kind of injunction and decree which was acceptable to them and if then, on the basis of such agreement, after no further proceedings were taken and the decree was entered as agreed upon, they could violate the decree and, when an attempt was made to hold them accountable for so doing, could reply that the decree was

void and illegal and that the Court had no power to enter such a decree. *Id.* We held that "[p]arties to an agreement cannot be allowed to repudiate that which they did with full knowledge, advice of counsel, and presumably for their own benefit." *Id.* We further held that "a decree entered by understanding consent of the parties is so conclusive that it will be vacated only on a showing that an objecting party's consent was obtained by fraud or that it was based on accident or a mutual mistake." *Id.* at 200. We noted that the consent decree was signed by Louis Rozman and the Rozmans' attorney and that the Rozmans had full understanding of the consent decree prior to its signing. Accordingly, we dismissed the Rozmans' petition to dissolve and vacate.

In our subsequent decision in *Dravosburg Housing Association v. Borough of Dravosburg,* 71 Pa.Cmwlth. 144, 454 A.2d 1158 (1983), we reversed a trial court's order declaring that a consent decree was unenforceable because it no longer represented an equitable agreement. We held that a consent decree is binding upon the parties until they agree to amend it. In doing so, we relied on *Rozman.* We noted that there is a strong public policy supporting the enforcement of settlement agreements. As we observed in *Dravosburg:*

> There is strong support in Pennsylvania law for the [ ] contention that in the absence of fraud, accident or mistake, a court has neither the power nor the authority to vary or modify the terms of a consent decree. *Pennsylvania Human Relations Commission v. A.K. Graybill, Jr., Inc.,* [482 Pa. 143, 393 A.2d 420 (1978) ] . . . . In *Rozman,* this Court held that **a consent decree is an agreement binding upon the parties thereto who cannot be allowed to repudiate that to which they agreed for purposes of their own and for their own benefit.** In [*Commonwealth v. United*

*States Steel Corporation,* 15 Pa.Cmwlth. 184, 325 A.2d 324 (1974) ], we held that no matter how distasteful a consent decree may later turn out to be to the parties, it remains binding upon them and cannot be changed by a court unless amendments thereto are submitted by the parties subject to the decree.

*Id.* at 1161 (emphasis added).

Here, the Board denied Licensee's liquor license renewal for the licensing period beginning March 1, 2010, and Licensee *voluntarily* entered into the CLA in order to renew its liquor license. Specifically, paragraph 7 of the CLA provides: "[Licensee] wishes to renew the license in question and proffers that many of the alleged problems with its operation will be alleviated if the conditions contained herein are imposed upon the license as well as the premises." (R.R. at 16a.) Paragraph 8m of the CLA states: "[Licensee] shall meet all Board requirements and submit all necessary documentation and fees necessary to effectuate renewal and validation for the licensing term effective March 1, 2010, after which the Board will renew the license and the amusement permit[.]" (R.R. at 21a.) Clearly, Licensee voluntarily entered into the CLA to maintain a liquor license that otherwise would have been revoked by the Board in light of its violations of the Liquor Code. *Paey Associates* (liquor license not renewed because of pattern of illegal activity that included public drunkenness, assaults, fights, intoxicated minors, and unconscious patrons); *Philly International Bar* (liquor license not renewed because of drug activity on the licensed premises); *Hyland Enterprises* (liquor license not renewed because of selling liquor to minors); *Matter of Restaurant Liquor License No. R–18291* (liquor license revoked for allowing dancing and entertainment after hours and for operating licensed premises in a noisy and disorderly manner). Licensee's business

would not be in operation if not for the CLA.

Further, paragraph 9 of the CLA details precisely the consequences of not adhering to the CLA as follows: "Failure to adhere to this [CLA] may result in citation(s) by the Bureau, and/or nonrenewal of this license by the Board; this is in addition to the revocation authorized by paragraph 8(*l*)." (R.R. at 22a.) Moreover, Licensee had additional notice that a violation of the CLA is a citable offense pursuant to the language in section 470(a) of the Liquor Code that states "[f]ailure by the applicant to adhere to the agreement will be sufficient cause to form the basis for a citation under section 471 and for the nonrenewal of the license under this section." 47 P.S. § 4–470(a). Although the restrictions stated in the CLA are not specifically set forth in the Liquor Code, the Board has the authority to include these restrictions in the agreement pursuant to section 470(a) of the Liquor Code.

The CLA clearly details the restrictions agreed upon by the parties, identifying the precise conduct that is required and prohibited as well as the consequences for violating the agreement. Thus, due process notice requirements have been satisfied and Licensee cannot now repudiate an agreement that Licensee accepted for its own benefit. *Rozman.* Due to Licensee's previous violations of the Liquor Code, which warranted revocation of Licensee's liquor license, Licensee had no right to continue its operations. However, by entering into the CLA, Licensee was able to maintain its business. Thus, we hold that the terms of the CLA are contractual, and Licensee must abide by the agreed upon restrictions.

### Effect of Trial Court's Order on CLA's Restrictions

Lastly, Licensee contends that the trial court erred in holding that its decision granting renewal of Licensee's liquor license was subject to the CLA's restrictions. Licensee argues that the CLA terminated upon the issuance of the trial court's opinion and order on January 8, 2013, because the trial court did not reference the CLA. Licensee asserts that it specifically requested the trial court to renew the liquor license without burden of the CLA and that its request was granted *sub silentio.* The trial court's order stated as follows:

AND NOW this 8th day of January, 2013, upon consideration of the de novo Hearing held on April 23, 2012, the Proposed Findings of Fact and Conclusions of Law submitted by both parties, and in reference to this Court's attached Memorandum Opinion, it is HEREBY ORDERED that the Pennsylvania Liquor Control Board's Order dated June 13, 2012, is OVERRULED.

The application for renewal of Restaurant Liquor License R–12671 applied for by [Licensee] for the premises located at 2312 Derry Street, Harrisburg, Pennsylvania is HEREBY GRANTED.

(R.R. at 50a.)

It is clear from the order that the only issue before the trial court in that proceeding was the liquor license renewal, as the Board's June 13, 2012 order was overruled. Although Licensee "request[ed] that [the trial court] grant its license renewal application without conditions," (R.R. at 120a), the application of the CLA was not before the trial court. Additionally, the parties expressly agreed in the CLA that the CLA remains a part of Licensee's liquor license until otherwise modified or rescinded. (R.R. at 22a.) As the trial court stated: "Again, we reiterate, that the CLA is not separate from the license, but rather is made a part of it. In granting the renewal of the license, we granted renewal with the additional restrictions on it." (Trial court op. at 11.)

Moreover, the trial court's reasoning is supported by section 470(a) of the Liquor Code, which states:

> The board may enter into an agreement with the applicant concerning additional restrictions on the license in question. If the board and the applicant enter into such an agreement, such agreement shall be binding on the applicant. Failure by the applicant to adhere to the agreement will be sufficient cause to form the basis for a citation under section 471 and for the nonrenewal of the license under this section.

47 P.S. § 4–470(a). The language in section 470(a) does not provide for termination of the CLA at the end of a two-year licensing period. In accordance with the parties' agreement and the provisions of the Liquor Code, the CLA attaches to Licensee's liquor license until further modification, and, thus, the trial court did not err in concluding that its order granting renewal of the liquor license included the CLA's restrictions.

### Conclusion

As we have concluded that the citation was valid, the CLA was not terminated or otherwise repudiated by the Board, the CLA scheme was not an unconstitutional delegation of legislative power, in particular as the CLA is a voluntary mechanism for a licensee to otherwise preserve its license after citation and revocation, and Licensee voluntarily entered into the CLA in order to maintain its liquor license that would otherwise have been revoked due to Liquor Code violations, Licensee is bound to the CLA's restrictions, and Licensee's liquor license was accordingly renewed under the burden of the CLA's restrictions. As such, the trial court did not err in dismissing Licensee's appeal.

In light of the above, we affirm.

Judge LEAVITT concurs in the result only.

### ORDER

AND NOW, this 24th day of March, 2015, the February 5, 2014 order of the Court of Common Pleas of Dauphin County is affirmed.