IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of: 738 MOC, Inc.    :
    :
From a decision of:    :
Pennsylvania Liquor Control Board    :
    :  No. 1258 C.D. 2021
Appeal of: 738 MOC, Inc.    :  Argued: November 14, 2022


BEFORE:   HONORABLE ANNE E. COVEY, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge
            HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON       FILED: January 9, 2023


738 MOC, Inc. (Licensee) appeals from the order of the Court of Common Pleas of Philadelphia County (trial court), dated October 8, 2021, which affirmed the decision of the Pennsylvania Liquor Control Board (Board) to uphold fines imposed on Licensee by an administrative law judge (ALJ) for sales of wine in violation of Section 415(a)(8) of the Liquor Code, 47 P.S. § 4-415(a)(8).[1]  Upon review, we reverse.


## I. Background

Licensee, which holds a valid restaurant liquor license, also holds a wine expanded permit that allows it to sell wine for off-premises consumption,

---

[1] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§ 1-101 to 10-1001.  Section 415 was added by the Act of June 8, 2016, P.L. 273.

which this Court has described as "wine to go."[2] Reproduced Record (R.R.) at 36a; 47 P.S. § 4-415(a)(8), (a)(9); *Log Cabin Prop., LP v. Pa. Liquor Control Bd.*, 276 A.3d 862, 866 (Pa. Cmwlth. 2022). Licensee also has a Class A transporter-for-hire license under Section 505 of the Liquor Code, 47 P.S. § 5-505, which allows it to deliver wine to off-premises locations. R.R. at 36a.

On August 2, 2018, Officer J.C. Suppin of the Bureau of Liquor Control Enforcement (Bureau), which is part of the Pennsylvania State Police, accessed Licensee's website, checked a box stating the buyer was over 21 years old, and used a credit card with a fictitious name to order a bottle of wine. Original Record (O.R.) #6 at 125 (Bureau's pre-hearing memorandum filed with the ALJ).[3] Officer Suppin arranged to have the wine delivered to the Swedish Museum in Philadelphia. *Id.* Three hours later, Officer Suppin was waiting at that location with a second officer when Licensee's delivery driver arrived. *Id.* The driver asked for and scanned an identification card provided by the second officer before handing over the bottle of wine to that officer. *Id.*

Similarly, on May 4, 2019, undercover officer S. Ralph of the Bureau accessed Licensee's site, averred that he was over 21 years old, ordered a bottle of wine using a credit card, and arranged to have it delivered to the Penrose Hotel in Philadelphia. O.R. #6 at 308. Within an hour, Licensee's driver arrived at the hotel where Officer Ralph was located with another officer. *Id.* The driver scanned an

---

[2] The wine expanded permit license is available to entities already holding restaurant liquor licenses and is therefore distinct from retail dispenser licenses, which Act 39 made available to entities like supermarkets in Sections 436 and 442 of the Liquor Code, 47 P.S. §§ 4-436, 442.

[3] At both the ALJ and trial court hearings, Licensee's counsel agreed that there was no dispute about the underlying facts of the incidents that led to the citations. Reproduced Record (R.R.) at 30a-31a & 170a.

identification card provided by the second officer and gave the wine to that officer. *Id*.

In each of the investigations, the fictitious name on the credit card used by the first officer to order the wine through Licensee's website did not match the fictitious name on the identification card used by the second officer to receive the wine at delivery by Licensee's driver, but there was no allegation by the Bureau that wine was sold to a minor. O.R. #6 at 125 & 308. Nevertheless, Licensee received citations for violating Section 415(a)(8) of the Liquor Code, which provides, in pertinent part, that "[a] wine expanded permit holder shall utilize a transaction scan device to verify the age of an individual who appears to be under thirty-five years of age *before making a sale of wine*." 47 P.S. § 4-415(a)(8) (emphasis added); R.R. at 17a-26a.

At a March 3, 2020, hearing before the ALJ, Licensee's president Marinos Fetfatzes testified that Licensee has had a wine expanded permit since the Commonwealth began offering them in 2016. R.R. at 36a-37a. Although Licensee currently requires customers to upload their identification cards to the website when they place orders, Fetfatzes acknowledged that when the orders that led to the citations were placed in 2018 and 2019, customers checked a box to aver that they were at least 21 years old and entered credit card information, but their identification cards were not physically checked until delivery. *Id*. at 59a-60a.

On August 11, 2020, the ALJ issued a decision upholding the citations and fining Licensee $50 per violation. R.R. at 91a-97a. The ALJ concluded that "sale" as it appears in Section 415(a)(8) is ambiguous and could be read to include e-commerce transactions for wine where identification is not checked until delivery. *Id*. at 96a. However, the ALJ also considered Section 415(a)(9), which sets forth

3

specific conditions for wine expanded sales, including that there be designated signage on the licensed premises and that patrons may not scan their own purchases. *Id*. at 96a-97a. The ALJ concluded that despite the ambiguity in Section 415(a)(8), Section 415(a)(9) was clearly intended to require that the entirety of such sales must take place on the licensed premises. *Id*. The ALJ cited two advisory opinions issued by the Board's chief counsel in 2016 and 2018, both of which concluded that wine expanded permit sales, including the physical identification check, must occur on the licensed premises. *Id*. at 94a-95a.

Licensee appealed to the Board, which affirmed the ALJ's decision in a January 13, 2021, opinion. R.R. at 106a-18a. The Board referenced the same advisory opinions and agreed that wine expanded permit sales, including the identification checks, must occur entirely on the licensed premises. *Id*. at 117a. Therefore, the Board concluded the citations were valid. *Id*.

Licensee appealed to the trial court, which affirmed the Board in an October 8, 2021, order that it supplemented with a March 14, 2022, opinion. R.R. at 193a-210a. The trial court cited the Board's advisory opinions with deference and noted that the General Assembly amended Section 415(a)(9) in August 2020 to state expressly that "[s]ales of wine must occur on the licensed premises." *Id*. at 201a & 206a (citing current version of 47 P.S. § 4-415(a)(9)). The trial court did not find Section 415 ambiguous. *Id*. at 200a & 206a-07a. It read Section 415(a)(8)'s proviso that identification must be checked by the wine expanded permit holder "*before* making a sale of wine" as drawing a clear distinction between sale and delivery. *Id*. at 203(a) (emphasis in original). Because Licensee admittedly did not physically check identification until delivery, which occurred off-premises and after it had

4

already processed the sale online, the trial court concluded that Licensee had not complied with Section 415(a)(8) and (a)(9). *Id*. at 203a-04a.

The trial court acknowledged that the punitive provisions of the Liquor Code are to be strictly construed against the Board. R.R. at 208a-09a. The trial court concluded, however, that application of the rule of lenity[4] was not warranted because the relevant sections of Section 415 are not ambiguous, but reflect legislative intent to allow restaurants with wine expanded permits to sell wine "to go" from their premises, but not to conduct online transactions with subsequent identification check upon delivery to an off-premises location; therefore, Licensee's violations were clear. *Id*. at 206a-07a. Licensee timely appealed to this Court.

## II. Discussion

This Court's standard of review of a trial court's determination in a Liquor Code case is whether the trial court committed an error of law, an abuse of discretion, or made findings of fact that were unsupported by the record. *Mag Enters. Inc. v. Pa. Liquor Control Bd.*, 806 A.2d 521, 522 (Pa. Cmwlth. 2002). The "error of law" component of the standard of review may include an issue of statutory construction, over which our review is plenary. *Malt Beverages Distribs. Ass'n v. Pa. Liquor Control Bd.*, 974 A.2d 1144, 1149 n.10 (Pa. 2009).[5]

---

[4] *See* explanation of the rule of lenity, *infra* at 9.

[5] Licensee's statement of errors contains six allegations of trial court error, some of which are duplicative. R.R. at 182a-90a. We have consolidated them into categories for clarity.

5

## A. Statutory Interpretation

This matter of first impression hinges on the statutory interpretation of Section 415 of the Liquor Code. When interpreting a statute, this Court is guided by Section 1921(a) of the Statutory Construction Act of 1972,[6] which provides that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. § 1921(a). "The clearest indication of legislative intent is generally the plain language of a statute." *Marshall v. Commonwealth*, 197 A.3d 294, 308 (Pa. Cmwlth. 2018). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Only "[w]hen the words of the statute are not explicit" may this Court resort to statutory construction. 1 Pa.C.S. § 1921(c). "A statute is ambiguous or unclear if its language is subject to two or more reasonable interpretations." *MFW Wine Co., LLC v. Pa. Liquor Control Bd.*, 231 A.3d 50, 54 (Pa. Cmwlth. 2020).

Section 415(a)(8) of the Liquor Code, which was the only provision cited in Licensee's citations, reads as follows: "A wine expanded permit holder shall utilize a transaction scan device to verify the age of an individual who appears to be under thirty-five years of age *before making a sale of wine*." 47 P.S. § 4-415(a)(8) (emphasis added).

Licensee argues that the administrative tribunals and trial court erred in considering Section 415(a)(9), which pertains to signage on licensed premises and bars sales by customers physically scanning their own purchases, because Licensee was cited only for violations of Section 415(a)(8). Licensee argues that Section 415(a)(8) is ambiguous in that the term "sale" can be read to allow an internet

---

[6] 1 Pa.C.S. §§ 1501-1991.

6

transaction followed by a physical identification check upon delivery to an off-premises location. Licensee's Br. at 15. In Licensee's construction, as long as identification for age is ensured before possession of the wine is transferred to the recipient, the required check has occurred "before" the sale is completed. *Id.*

The Bureau responds that Licensee was properly cited for violations of Section 415(a)(8) because the identification check for the sales made to the officers was not conducted until delivery of the wine *after* the sale occurred online rather than *before* the sale as the provision expressly requires. Bureau's Br. at 15. The Bureau asserts that Sections 415(a)(8) and 415(a)(9), read together, are unambiguous and that the trial court's interpretation comported with the General Assembly's apparent intent to allow sales of "wine to go" at restaurants, but to limit such transactions to in-person sales on licensed premises. *Id*. at 16-17. The Bureau adds that even though Licensee was cited only for violations of Section 415(a)(8), Section 415(a)(9)'s references to signage and self-scanning capability indicate that wine expanded permit sales must be conducted on the licensed premises, and Section 415(a)(9) should be considered because the nature of the violation should have been clear to Licensee. Bureau's Br. at 29 n.12 (citing *Derry Street Pub, Inc. v. Pa. State Police, Bureau of Liquor Control Enforcement*, 111 A.3d 1240, 1246-47 (Pa. Cmwlth. 2015)).

The trial court distinguished between the online credit card transaction for the wine, which the trial court characterized as the "sale," and the subsequent delivery of the wine. R.R. at 203a. Construing these actions as separate, the trial court concluded the General Assembly made clear in Section 415(a)(8) that the identification check must occur before the "sale," which is when the buyer's credit card is processed. *Id.* Licensee admitted that did not occur in the sales that led to

7

the citations. *Id*. The trial court therefore did not find Section 415(a)(8) ambiguous. *Id*. at 200a.

We disagree. Section 415(a)(8) reads in pertinent part: "A wine expanded permit holder shall utilize a transaction scan device to verify the age of an individual who appears to be under thirty-five years of age *before making a sale of wine*." 47 P.S. § 4-415(a)(8) (emphasis added). At issue is whether the term "sale" may be read as including Licensee's practice of conducting an internet transaction followed by an identification check upon delivery to an off-premises location.

Section 102 of the Liquor Code defines "sale" as "any transfer of liquor, alcohol or malt or brewed beverages for a consideration." 47 P.S. § 1-102. The historical and usual practice in Pennsylvania is that the entire transaction, including identification check, takes place at the same time in a "state store." However, Section 415(a)(8) does not specify that the physical transfer of wine to the buyer after identification check and payment must take place contemporaneously or in the same physical place. Likewise, although Section 415(a)(8) requires an identification check when the buyer "appears to be under thirty-five years of age," it does not mandate that this cannot occur on subsequent delivery to another location or even to someone other than the person who conducted the initial transaction, as long as the person ultimately receiving the wine provides proof of age. Standing alone as the only provision cited in Licensee's citations, Section 415(a)(8) therefore does not necessarily preclude Licensee's sale practices and is ambiguous.

We recognize the Bureau's argument that even though Licensee was only cited with violations of Section 415(a)(8), Section 415(a)(9) should be considered, based on *Derry Street Pub*, which held that a citation containing the incorrect section of the Liquor Code was sufficient as long as the licensee could

8

discern the nature of the violation. However, that case does not address circumstances where the citation charges a violation of a provision that is itself ambiguous, as is the case here. In light of the foregoing, the trial court erred in concluding that Section 415(a)(8) is not ambiguous.

## B. Rule of Lenity

Section 1928(b)(1) of the Statutory Construction Act states that penal provisions "shall be strictly construed." 1 Pa.C.S. § 1928(b)(1). This statutory requirement codifies the rule of lenity, which originated in common law and provides that:

> any ambiguity in a criminal statute will be construed in favor of the defendant. The rule of lenity requires a clear and unequivocal warning in language that people generally would understand, as to what actions would expose them to liability for penalties and what the penalties would be. Application of the rule of lenity extends beyond the context of criminal statutes.

*Richards v. Pa. Bd. of Prob. & Parole*, 20 A.3d 596, 600 (Pa. Cmwlth. 2011) (internal quotation omitted). "Underpinning the rule of lenity is the fundamental principle of fairness that gives validity to our laws" by providing individuals the clear and unequivocal warning discussed above. *Sondergaard v. Dep't of Transp., Bureau of Driver Licensing*, 65 A.3d 994, 997 (Pa. Cmwlth. 2012). "To apply the rule of lenity, it is not enough that a statute is penal[;] it must be ambiguous as well." *Id*. at 999.

Licensee argues that the Liquor Code's enforcement provisions are penal in nature and therefore, the ambiguity in Section 415(a)(8) must be strictly construed against the government. Licensee's Br. at 26-28. Licensee posits that there is no conflict between liberal construction of the remedial portions of the

9

Liquor Code and strict construction of its punitive aspects. *Id.* at 30. The Bureau responds that the rule of lenity applies only when the statute is ambiguous in failing to put perpetrators on notice that their actions are illegal; but because Section 415(a)(8), when read with Section 415(a)(9), clearly bars online wine transactions with identification checks upon delivery to off-premises locations, Licensee is not entitled to strict construction. *Id.* at 16, 22-23. The trial court agreed with the Bureau. R.R. at 207a. However, in light of our conclusion that Section 415(a)(8) is ambiguous, we consider the propriety of applying the rule of lenity here.

Generally, the Liquor Code is treated as remedial civil legislation and is liberally construed to effectuate its purpose of protecting the public health, welfare, peace, and morals. *First Ward Republican Club of Phila. v. Commonwealth*, 11 A.3d 38, 43 (Pa. Cmwlth. 2010). However, certain aspects of the Liquor Code are punitive in nature and, as noted, it is enforced by the Bureau, which is part of the Pennsylvania State Police. Article IV, which contains Section 415, states in Section 494(a) that

> *[a]ny person who shall violate any of the provisions of this article, except as otherwise specifically provided, shall be guilty of a misdemeanor* and, upon conviction thereof, shall be sentenced to pay a fine of not less than one hundred dollars ($100), nor more than five hundred dollars ($500), and on failure to pay such fine, to imprisonment for not less than one month, nor more than three months, and for any subsequent offense, shall be sentenced to pay a fine not less than three hundred dollars ($300), nor more than five hundred dollars ($500), and to undergo imprisonment for a period not less than three months, nor more than one year, or both.

47 P.S. § 4-494(a) (emphasis added). Section 415 does expressly exempt wine expanded permit holders from sanctions under Section 493(14) of the Liquor Code, 47 P.S. § 4-493(14), which forbids minors to be on licensed premises except in

10

enumerated circumstances. *See* 47 P.S. § 4-415(a)(5). However, nothing else in Section 415 precludes sanctions under Section 494(a). We therefore conclude that Section 415 is sufficiently penal in nature to implicate the rule of lenity.

As discussed above, Section 415(a)(8) is ambiguous. It can be read to mean that an identification check for age must take place in person before the "sale," meaning contemporaneous receipt of payment and transfer of possession of wine. In the alternative, the term "sale" may be read broadly enough to include an internet transaction followed by an in-person identification check upon delivery off-premises.

Section 494(a) of the Liquor Code states that "[a]ny person who shall violate any of the provisions of this article, except as otherwise specifically provided, shall be guilty of a misdemeanor." 47 P.S. § 4-494(a). Here, Licensee was cited for violations of Section 415(a)(8) by the Bureau, which is part of the Pennsylvania State Police. R.R. at 15a-23a. Although Licensee was not threatened with imprisonment, the imposition of a fine in this context is clearly punitive in nature because if the charges are upheld as valid, Licensee will be guilty of misdemeanors pursuant to Section 494(a).

This matter therefore concerns an ambiguous statutory provision, specifically Section 415(a)(8), which is also penal in nature. At the time Licensee received its citations, Section 415(a)(9), with its emphasis on physical conditions such as signage and self-scanning payment areas, could be read as requiring that the entire transaction take place in person on the licensed premises. However, Licensee was not cited for a violation of Section 415(a)(9); therefore, it is not relevant to our inquiry. We conclude that the trial court erred as a matter of law in failing to apply

11

the rule of lenity to the Bureau's assertion that Licensee violated Section 415(a)(8). The charges and fines imposed on Licensee must therefore be negated.

Our disposition of this case may not, however, serve as the basis to open the floodgates for other wine expanded permit holders to engage in the same practices as Licensee, nor does it allow Licensee to continue these practices. Under the August 2020 amendments to Act 39, Section 415(a)(9) now expressly states that for these permit holders, "[s]ales of wine must occur on the licensed premises." 47 P.S. § 4-415(a)(9) (effective as of August 3, 2020). Even if, as Licensee has argued, the concept of a "sale" as it occurs in the Liquor Code includes the entire process, including the identification check and transfer of the wine to the customer, Section 415 as a whole now clearly states that the entire process must take place on licensed premises.[7]

### III. Conclusion

In light of the foregoing, the trial court's order is reversed and this matter is remanded to the trial court for further proceedings consistent with this opinion.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[7] In light of our conclusion, we do not reach Licensee's claims asserting that the trial court and administrative tribunals erred in deferring to the Board's advisory opinions, which counseled that pursuant to Section 415(a)(8) and (a)(9) together, wine expanded permit sales may not consist of internet transactions followed by identification checks upon delivery to off-premises locations.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of: 738 MOC, Inc.    :
                                   :
From a decision of:                :
Pennsylvania Liquor Control Board  :
                                   :    No. 1258 C.D. 2021
Appeal of: 738 MOC, Inc.           :    Argued: November 14, 2022

O R D E R

AND NOW, this 9th day of January, 2023, the October 8, 2021, Order of the Court of Common Pleas of Philadelphia County is REVERSED. This case is remanded for further proceedings consistent with this opinion.

Jurisdiction is relinquished.

_____
CHRISTINE FIZZANO CANNON, Judge