**TODD'S BY THE BRIDGE, INC.**

**v.**

**PENNSYLVANIA LIQUOR CONTROL BOARD, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Nov. 13, 2012.

Decided June 18, 2013.

Publication Ordered Aug. 26, 2013.

Michael J. Plank, Assistant Counsel, Harrisburg, for appellant.

Charles L. Caputo, Pittsburgh, for appellee.

BEFORE: PELLEGRINI, President Judge, and McGINLEY, Judge (P.), and COVEY, Judge.

OPINION BY Judge McGINLEY.

The Pennsylvania Liquor Control Board (LCB) challenges the order of the Court of Common Pleas of Allegheny County (trial court) which reversed the LCB's refusal to renew the liquor license of Todd's By the Bridge, Inc. (Licensee). The trial court granted the application for renewal subject to the conditions set forth in Paragraph 13 of the Hearing Examiner's Proposed Conclusions of Law.[1]

1. The relevant paragraphs of the Hearing Examiner's Proposed Conclusions of Law provide as follows:

9. The applicant has failed to verify and the Department of Labor and Industry has not informed the Board that all State tax reports have been filed and all state taxes have been paid, timely appealed or approved for deferred payment as required by Section 477 of the Liquor Code, as amended effective July 1, 1987, for the licensing period effective June 1, 2011.

10. Applicant does not have a current valid health license.

11. Applicant has failed to file a late filing statement detailing the reason why the renewal application was filed late.

12. Applicant has not submitted a completed application addendum for the renewal application.

13. The application for renewal of Restaurant Liquor License R–1757 should be Approved contingent upon the successful completion of the provisions referenced in the Paragraphs 9, 10, 11 and 12 of these Proposed Conclusions of Law.

Licensee is a Pennsylvania corporation which operates a restaurant/tavern at 5200 Walnut Street, McKeesport PA 15132–6324.[2] On April 6, 2011, Licensee filed an untimely application for renewal of its liquor license for the period beginning June 1, 2011, and ending May 31, 2013.

Licensee indicated that its application was late due to "forgot health dept. copy." Application Addendum for Renewal of License/Permit, May 17, 2011, at 1; Reproduced Record (RR) at 106a. By letter dated May 17, 2011, the LCB's Bureau of Licensing (Bureau) notified Licensee that it objected to the renewal of its license for the following reasons:

1. It is alleged that you have abused your licensing privilege, and pursuant to Section 470 of the Liquor Code (47 P.S. § Section 4–470), you may no longer be eligible to hold a license based upon the improper conduct of your licensed establishment as there have been approximately nine (9) incidents of disturbances at or immediately adjacent to your licensed establishment during the time period June 1, 2009 to present reported to the Versailles Borough Police Department. This activity includes, but is not limited to fights, assaults, loud music and disorderly operations.

2. You have breached the Conditional Licensing Agreement approved by the Board on January 3, 2007 signed by Stephen Kastronis, President of JOK Tavern, Inc. and Faith Diehl, Chief Counsel, Pennsylvania Liquor Control Board by specifically not obtaining certification through the Responsible Alcohol Management Program (RAMP) to include, but not limited to new employee orientation, training for alcohol service personnel, manager/owner training, and displaying of responsible alcohol service signage. In addition, the Conditional Licensing Agreement was breached by having a disc jockey play recorded music on a day of the week other than Tuesday, Thursday, Friday, and Saturday.

3. Corporate officer Todd A. Arthrell was arrested on April 4, 2007 and later plead [sic] guilty to one (1) count of unlawful sales of liquor.

4. It is alleged that corporate officer, Todd A. Arthrell, may no longer be reputable as required under Section 102 and 470 of the Liquor Code (47 P.S. §§ 1–102 and 4–470) based upon the misdemeanor arrest for one (1) count of unlawful sales of liquor.

5. Corporate officer Todd A. Arthrell was arrested on November 16, 2010 for one (1) count of gambling devices, one (1) count of allow [sic] gambling, and one (1) count gambling/allow on premises.

6. The Bureau of Licensing has rejected the late-filed renewal application pursuant to Section 470(a) of the Liquor Code (47 P.S. § 4–470(a)).

7. The applicant has failed to verify and the Department of Labor and Industry has not informed the Board that all State tax reports have been filed and all state taxes have been paid, timely appealed or approved for deferred payment as required by Section 477 of the Liquor Code, as amended effective July 1, 1987, for the licensing period effective June 1, 2011.

8. The applicant has failed to submit a copy of the current and valid health license.

9. The applicant has failed to file a late filing statement detailing the reason why the renewal application was filed late.

10. The applicant has failed to submit the completed application addendum for the renewal application.

2. Although the mailing address is McKeesport, the bar is located in Versailles.

Letter from Jane Melchior, Director Bureau of Licensing, May 17, 2011, at 1–2; R.R. at 109a–110a. By letter dated June 22, 2011, the Bureau notified Licensee that a hearing was scheduled for August 11, 2011, for the purpose of taking legally admissible testimony on the objections to the renewal.

At the August 11, 2011, hearing, the Bureau presented the late filed renewal application, a copy of its objection letter, a conditional licensing agreement signed by the previous licensee at that location, and documents related to two criminal proceedings against Todd Arthrell (Arthrell), owner of Licensee.

Patrolman Mark Sargent (Patrolman Sargent) of the White Oak Borough Police Department testified that White Oak Borough had a one year contract to provide police services for Versailles Borough. Patrolman Sargent testified that on September 13, 2011, and on September 19, 2011, he was dispatched to Licensee's premises. He could hear music because the doors were propped open. The first time he asked the bartender to turn down the music. The bartender complied. The second time he asked the bartender to close the front doors. Once again, Patrolman Sargent's directive was followed. Notes of Testimony, August 11, 2011, (N.T.) at 7–8; R.R. at 23a–24a.

Corporal Frank Barreiro (Cpl. Barreiro) of the Borough of Versailles Police Department (Department) testified that he was called to the licensed premises on December 12, 2010 after the Department received a report of a large fight involving approximately ten people. N.T. at 12; R.R. at 28a. Upon his arrival at the scene, Cpl. Barreiro actually found only three people (two were outside the premises, and one was inside) who were involved in a dispute. None of the individuals wanted to press charges. N.T. at 13–14; R.R. at 29a–30a.

Officer Timothy J. Walker (Officer Walker) of the Department testified that he was dispatched to the licensed premises on December 18, 2010, to take an assault report. When Officer Walker arrived, he encountered two individuals outside the bar who claimed to have been assaulted inside the bar. N.T. at 18–19; R.R. at 34a–35a. Officer Walker cited two other individuals for "2709 harassment, strike, shove, kick or push." N.T. at 21; R.R. at 37a. One was convicted, and one was not. N.T. at 21; R.R. at 37a.

William Kruczek (Chief Kruczek), chief of the Department, testified on behalf of Licensee, that Arthrell's reputation in the community was not hurt by his conviction for selling alcohol without a license in 2007. N.T. at 41–42; R.R. at 57a–58a. He also testified that Licensee did not require a disproportionate amount of the police force for control. N.T. at 44; R.R. at 60a.

Arthrell testified that he installed "Acoustic Block," a material which converts sound energy into heat energy to reduce noise, outside of the building. He also changed the speaker system to reduce noise to the outside. N.T. at 58–59; R.R. at 75a. On the four nights per week when Licensee had entertainment there were two doormen and a person in the back room for security. N.T. at 61; R.R. at 77a. Arthrell notified the police if there was a disturbance, he was either at the premises or very close by. He and his staff were RAMP certified since August 2011. He admitted that his RAMP certification expired before he renewed it. N.T. at 62–64; R.R. at 78a–80a. Arthrell admitted pleading guilty in 2007 to a charge of unlawful sale of liquor which was prior to the LCB's approval of Licensee for a license. N.T. at 65; R.R. at 81a. At the time he was charged, he did not own the bar but worked there. One of the owners removed the license from its location on a

wall of the premises. N.T. at 66–67; R.R. at 82a–83a. Arthrell explained why he filed the license late: "It was the first time that I had filled it out myself. I usually have an attorney, but I couldn't afford it anymore. So I went at it on my own and I did some parts incorrectly." N.T. at 69–70; R.R. at 85a–86a.

The hearing examiner recommended that the renewal of the license be granted provided that Licensee verify that all state taxes had been paid, appealed or approved for deferred payment; that Licensee provide a valid health license; that Licensee file a late filing statement; and that Licensee complete an application addendum.

On October 26, 2011, the LCB refused the renewal application:

> The instant matter involves a situation where the prior licensee, JOK Tavern, Inc., had a citation history that caused Licensing to object to its renewal and JOK Tavern, Inc. was only able to have its license renewed for the period beginning June [sic] 1 2005, because it entered into a CLA [conditional licensing agreement] with the Board on December 8, 2006.
>
> Paragraph 7 of the CLA [conditional licensing agreement] specifies that '[t]his agreement will remain in effect on the location unless and until a subsequent agreement is reached with the Board rescinding these restrictions or the license is transferred to a new owner for use at a new location.'
>
> . . . .
>
> The record shows that Licensee acquired its license from JOK Tavern, Inc. on June 2009, pursuant to a person-to-person transfer . . . which is a change in ownership and not location. The record also shows that Licensee's employees and Licensee's owner became RAMP-compliant on August 1, 2011 and July 26, 2011, respectively. The record is clear

> that the CLA [conditional licensing agreement] agreed to by JOK Tavern, Inc. for the instant license is applicable to Licensee, pursuant to section 7 of the CLA [conditional licensing agreement] and section 404 of the Liquor Code, since the instant license was not moved to another location and the Board did not rescind any of the restrictions specified in the CLA [conditional licensing agreement]. Therefore, Licensee has breached its CLA [conditional licensing agreement] with the Board because it did not have the required RAMP training specified in Paragraph 3(a) of the CLA [conditional licensing agreement] until August 1, 2011.
>
> . . . .
>
> The record shows that Mr. Arthrell was arrested on April 4, 2007 and charged with one (1) count of unlawful sales of liquor, and he subsequently pled guilty to the charge on January 8, 2008 . . . . Although Mr. Arthrell testified at the instant hearing that he was the manager for the prior licensee when the incident occurred and he was not aware that one (1) of the stockholders had removed the license, the Board believes that Mr. Arthrell should have known as the Board-approved manager that the licensed establishment did not have a license to sell alcoholic beverages. Therefore, the Board finds that Mr. Arthrell failed to provide sufficient evidence at the hearing to show why he should still be considered a reputable person after being convicted of unlawful sales of liquor. Accordingly, the Board finds that Mr. Arthrell is not of sufficient reputation as required by the Liquor Code.
>
> . . . .
>
> As to Licensing's sixth objection, the record shows that Licensing [sic] filed its renewal application for the licensing

period effective June 1, 2011, on April 8, 2011, and the application should have been filed on or before April 2, 2011. Pursuant to section 470(a), Licensee's failure to have filed its renewal applications with tax clearance, sixty (60) days prior to the expiration of the license period, renders it late-filed. This delay, standing alone, would probably not cause the Board to decline to renew this license. However such is not the case herein.

With regard to Licensing's seventh objection, the record shows that Licensee filed an Application Addendum for Renewal of License/Permit with Licensing on May 17, 2011, but Licensee failed to provide all the required information requested on the form. The form required Licensee to provide a late filing statement and conviction record information, and Licensee only provided a late filing statement. On May 19, 2011, Licensing sent another Correction Sheet and Application Addendum for Renewal of License/Permit form to Licensee, requesting conviction record information. As of the date of the instant hearing, Licensee had not returned the completed Application Addendum for Renewal of License/Permit form to Licensing with the conviction record information, and on that basis alone, the Liquor Code requires that Licensee's application renewal be denied.

. . . .

The Board is troubled by Licensee's failure to provide the pertinent details at the instant hearing to show that it has implemented the appropriate security measures to address its numerous incidents at its licensed premises. Although, Licensee's sole owner, sole corporate officer, and Board-approved manager, Todd Arthrell, testified that Licensee has two (2) bouncers employed on the nights it has entertainment, the Board finds that Licensee has not adequately implemented the appropriate corrective measures at its licensed premises, given its numerous serious police incidents. For example, Licensee failed to provide information on whether it has the appropriate exterior lighting and security cameras installed on its licensed premises. Given the numerous fights and assaults on the licensed premises, the Board cannot comprehend why Licensee would not have undertaken the appropriate measures to ensure that it has the appropriate lighting and security cameras to ensure the safety of its patrons.

Another area of security concern for the Board is Licensee's failure to provide any information regarding the utilization of a metal detecting wanding device on its patrons. . . . Also, the Board is concerned with Licensee's failure to provide any evidence at the hearing to show that it is serious about its security by maintaining a barred patron list because maintaining such a list is a basic corrective measure that a licensee can undertake to help address its security issues. It is very disconcerting to the Board that Licensee appears to have failed to take the initiative to implement a barred patron list, especially given Licensee's numerous police incidents.

The utilization of Licensee's security personnel is also troubling to the Board. Although Licensee testified that it utilizes security personnel, it failed to provide the pertinent details with regard to the number of security personnel, hours that security is on the licensed premises, whether all the security personnel wear identifiable uniforms, and whether Licensee has documented security policies.

Although the hearing examiner recommended that Licensee's license be renewed upon it providing the appropriate

information to Licensing in its Application Addendum for Renewal of License/Permit, the Board finds that Licensee's license should not be renewed and considering the discretion given to the Board by the Legislature in section 470 of the Liquor Code, Licensee's failure to demonstrate to the Board that it has undertaken the appropriate timely corrective measures to address its security issues at the licensed premises; Licensee's sole corporate officer, Mr. Arthrell, no longer being reputable as required by the Liquor Code; Licensee's late filing of its renewal application; and Licensee's failure to provide the pertinent conviction information on an Application Addendum for Renewal of License/Permit form to Licensing, provide more than enough reason to not renew this license .... (footnote omitted).

LCB Opinion, October 26, 2011, at 26–27, 29–31 and 33–35; R.R. at 194a–195a, 197a–199a, and 201a–203a.

Licensee appealed to the trial court. The trial court heard the matter on February 16, 2012. The parties agreed to submit the entire record from the LCB proceeding.

Arthrell testified that his security personnel wear bright orange shirts that say "staff" on them. Notes of Testimony, February 16, 2012, (N.T. 2/16/12) at 10; R.R. at 239a. Arthrell also testified that he paid the penalty for filing Licensee's renewal application late and that he submitted all required information. N.T. 2/16/12 at 14; R.R. at 243a. Arthrell testified that he and his employees were RAMP certified for approximately the last year. N.T. 2/16/12 at 15; R.R. at 244a.

On February 21, 2012, the trial court reversed the decision of the LCB and granted the appeal subject to the conditions set forth in paragraphs five and six of the Hearing Examiner's proposed conclusions of law [3]:

The record is clear the present licensee has incurred no adjudicated citations.... There have been no incidents related to drug activity, sales of alcohol to minors, sales after hours, prostitution or disorderly operations.... The Board has not established nine incidents of disturbances. At best, officers testified to four incidents and reports of two additional incidents were introduced. Police Chief Kruczek testified neither the number nor nature of the incidents was disportionate [sic] to other businesses and retail establishments; nor was there anything he considered 'outlandish.'.... Licensee timely expended various sums of money for expensive Acoustic Block, an upgraded air conditioning system and new speakers in response to the noise incidents. Arthrell further informed Chief Kruczek of the steps he had taken and was not informed of any additional noise complaints.

Only one of the four remaining incidents involved personal injury. There was no indication that any of the participants were intoxicated. In only one incident were charges filed, i.e., for the summary offense of harassment.

....

An analysis of the incidents reveals two noise complaints for which licensee took substantial steps to remedy. Of the remaining incidents, neither the testimony of the police officers nor the police reports provided any evidence relating to alcohol or intoxication. While the brass

---

3. On May 30, 2012, the trial court issued an amended order and granted the appeal subject to the conditions contained in Paragraph

No. 13 of the Hearing Examiner's Proposed Conclusions of Law.

knuckles incident was a serious matter, it was the victim who attempted to use them in response to being assaulted. This incident was introduced by report only. There is no evidence as to whether the victim entered the bar prior to security being on duty. As explained above, licensee's policy is to have security immediately step in and attempt to diffuse any issue or altercation that arises. Security requests those involved to leave the premises separately, assuring no further problems occur in the parking lot. If necessary, Arthrell or his employees will call the police. Further, licensee increased security to seven nights a week and doubled it on nights when there is entertainment. I find the incidents were not the result of or causally connected/related to the manner in which licensee operated the bar restaurant within the meaning of § 4–470(a.1)(4) of the Liquor Code.

. . . .

The language of the CLA [conditional licensing agreement] . . . is ambiguous as to whether the RAMP certification requirements and/or the time limitations apply to subsequent licensees. Even if licensee was, at some point in time, in violation of the RAMP requirements of the CLA [conditional licensing agreement], it is uncontested that prior to the August 11, 2011 hearing, Arthrell and his employees were RAMP certified and under § 4–470.1(f) the certification is valid for two years. . . . Any concerns about the previous or present licensee's complying with this provision of the CLA [conditional licensing agreement] have been addressed.

. . . .

The circumstances of licensee's conviction are set forth above. At the time, Arthrell owned the building, but was not the licensee. He entered a guilty plea at a proceeding at which the sentencing judge expressed his opinion that the plea would not affect his ability to get a liquor license. As part of the license transfer process, Arthrell was required to submit to a criminal background check. Consequently, his background was known to the Board when it approved his application. It seems disingenuous for the Board to now use this same conviction to claim Arthrell is not a person of good repute. Furthermore, Police Chief Kruczek testified that in his eyes, Arthrell's conviction did not affect his reputation. . . .

While the Board acknowledged this would not be a sufficient basis, standing alone, to deny renewal, it did consider licensee's late and incomplete filing of the restaurant liquor license renewal application, addendum, and failure to submit a completed application addendum as a factor in denying renewal. Arthrell testified he could not afford an attorney and completed the application himself. He believed the application would be timely as long as he filed prior to the expiration date of his current license. When notified of the late filing and missing information, Arthrell called the Board and was told what to do. He submitted an addendum and a $100 late filing fee. He believed everything was in order when his check was cashed. . . . The Board's main finding, in this regard, was licensee's failure to provide conviction information.

. . . . However, a reading of this paragraph makes it clear that it would not apply to his 2008 conviction which occurred *before* the grant of his *initial* application and license. Because Arthrell had no misdemeanor or felony *convictions* since his 'last application was filed,' this section of question 16 was inapplicable because he had nothing to report.

Licensee lives in the Versailles community and has responded to any issue or problem that has arisen in a timely manner. After consideration of the entire record and arguments of the parties, there was substantial evidence to warrant the renewal of licensee's restaurant liquor license subject to the conditions I imposed. (Citations omitted. Footnote omitted. Emphasis in original).

Trial Court Opinion, June 21, 2012, at 10–13 and 15–19; R.R. at 290a–293a and 295a–299a.

■ The LCB contends that the trial court erred as a matter of law when it held that Licensee was not accountable for the numerous incidents in question, that the trial court abused its discretion when it concluded that Licensee took substantial steps to address the unlawful activity occurring at the licensed premises, and that the trial court erred when it dismissed the LCB's consideration of Arthrell's reputation, including Arthrell's conviction for selling alcohol without a license, simply because part of that reputation was known to the Board prior to the initial issuance of this license.[4]

■ Under the Liquor Code (Code)[5], the renewal of a liquor license is not automatic. Section 470(a.1) of the Code, 47 P.S. § 4–470(a.l), provides that the LCB may refuse to renew a liquor license for several reasons.[6] The LCB may consider the licensee's record of violations when it decides whether to renew a liquor license and even a single violation may be sufficient to decline to renew. *Hyland Enterprises, Inc. v. Pennsylvania Liquor Control Board,* 158 Pa.Cmwlth. 283, 631 A.2d 789 (1993). This Court has determined that "regardless of when they occur the Board [LCB] may consider all code violations committed by a licensee in determining whether to renew a liquor license." *Bartosh,* 730 A.2d at 1033.

■ When a party appeals an LCB decision, the trial court hears the appeal *de*

4. This Court's review is limited to a determination of whether the trial court's findings are supported by substantial evidence and whether the trial court abused its discretion or committed an error of law. *Pennsylvania Liquor Control Board v. Bartosh,* 730 A.2d 1029 (Pa.Cmwlth.1999).

5. Act of April 12, 1951, *as amended,* 47 P.S. §§ 1–101–10–1001.

6. Section 470(a.1) of the Code, 47 P.S. § 4–470(a.1), provides: The Director of the Bureau of Licensing may object to and the board may refuse a properly filed license application:

(1) if the licensee, its shareholders, directors, officers, association members, servants, agents or employes have violated any of the laws of this Commonwealth or any of the regulations of the board;

(2) if the licensee, its shareholders, directors, officers, association members, servants, agents or employes have one or more adjudicated citations under this or any other license issued by the board or were involved in a license whose removal was objected to by the Bureau of Licensing under this section;

(3) if the licensed premises no longer meets the requirements of this act or the board's regulations; or

(4) due to the manner in which this or another licensed premises was operated while the licensee, its shareholders, directors, officers, association members, servants, agents or employes were involved with that license. When considering the manner in which this or another licensed premises was being operated, the board may consider activity that occurred on or about the licensed premises or in areas under the licensee's control if the activity occurred when the premises was open for operation and if there was a relationship between the activity outside the premises and the manner in which the licensed premises was operated. The board may take into consideration whether any substantial steps were taken to address the activity occurring on or about the premises.

*novo* and makes its own findings of fact and conclusions of law. The trial court must receive the record of the proceedings before the Board, if it is offered, and is permitted to take additional evidence. The trial court may sustain, alter, change, modify or amend a decision by the LCB, even if the trial court does not make findings of fact that are materially different from those found by the LCB. *Two Sophia's Inc. v. Pennsylvania Liquor Control Board,* 799 A.2d 917 (Pa.Cmwlth.2002).

■ In determining whether to renew a license on appeal, the trial court is permitted to consider substantial steps taken by a licensee to remediate the violations. *U.S.A. Deli, Inc. v. Pennsylvania Liquor Control Board,* 909 A.2d 24 (Pa.Cmwlth. 2006), *petition for allowance of appeal denied,* 593 Pa. 736, 929 A.2d 647 (2007).

■ Initially, the LCB contends that the trial court erred as a matter of law when it held that Licensee could not be held accountable for the numerous incidents in question. The LCB asserts that the trial court erred because it required the activity to be the result of intoxication and, if it was not, the trial court discounted the incidents.

First, a review of the trial court opinion reveals that the trial court did not require that a reported incident be the result of intoxication. While the trial court did mention that there was no indication that any of the participants in the incidents were intoxicated, the trial court analyzed whether there was a connection between the incidents and the manner in which Licensee operated its business.

■ Second, two of the incidents concerned complaints of loud music. When told to turn down the music, the bartender complied both times. No citations were issued. The incident of December 12, 2010, involved three individuals. When Cpl. Barreiro arrived on the scene, there was no altercation taking place, and none of the individuals elected to press charges. The incident of December 18, 2010, resulted in citations for harassment issued to two individuals. The trial court, as factfinder, evaluated these incidents and determined that the incidents were not the result of or causally connected to the manner in which Licensee operated the bar within the meaning of the Code.[7] The LCB has failed to establish that the trial court committed an error of law.

■ The LCB next contends that the trial court abused its discretion and/or committed an error of law when it concluded that Licensee took substantial steps to address the unlawful activity that occurred at the licensed premises. The LCB argues that even though Licensee added Acoustic Block, improved the air conditioning system so that the door could be closed, and installed smaller speakers, these measures were not undertaken quickly enough after the Department came to the licensed premises in response to noise complaints in 2009. Similarly, the LCB asserts that Licensee's response to incidents of fighting was inadequate because it did not "bar patrons," make a

---

7. The LCB refers to two other incidents which were introduced by police reports. The LCB attempted to authenticate the reports through an officer who was not a custodian of the records and had no firsthand knowledge of the manner in which the reports were prepared or maintained. Licensee objected to the introduction of the reports on the basis of hearsay. The trial court over-ruled the objection. Under *First Ward Republican Club of Philadelphia v. PA. Liquor Control Board,* 11 A.3d 38 (Pa.Cmwlth.2010), *petition for allowance of appeal denied,* 611 Pa. 647, 24 A.3d 864 (2011), the reports were inadmissible hearsay. However, any error regarding the admission of the reports was harmless.

"barred patron" list, did not install security cameras, improve lighting, use a metal detector, maintain a log of incidents, and, until recently, did not have security at all times. However, based on the evidence, the trial court found that Licensee had increased security to seven nights a week and doubled it on nights when there was entertainment.

This Court agrees with the trial court that Licensee undertook substantial steps in a timely manner to improve the noise situation and the security situation. Licensee is not required to institute every possible safety measure.

 Next, the LCB contends that the trial court erred as a matter of law when it dismissed the Board's consideration of Licensee's reputation including Arthrell's conviction for selling alcohol without a license because that conviction was known to the Board prior to the initial issuance of the license.

The LCB relies on *Street Road Bar & Grille, Inc. v. Pennsylvania Liquor Control Board*, 583 Pa. 72, 876 A.2d 346 (2005) for the proposition that it is the Licensee's burden to prove that it is of good repute. *Street Road* differs from the present case in that it involved a transfer of a license rather than a renewal.

Section 470(a) of the Code, 47 P.S. § 4–470(a), provides in pertinent part:

Unless the board shall have given ten days' previous notice to the applicant of objections to the renewal of his license, based upon violation by the licensee or his servants, agents or employes of any of the laws of the Commonwealth or regulations of the board relating to the manufacture, transportation, use, storage, importation, possession or sale of liquors, alcohol or malt or brewed beverages, or the conduct of a licensed establishment, or unless the applicant has by

his own act become a person of ill repute, or unless the premises do not meet the requirements of this act or the regulations of this board, the license of a licensee shall be renewed.

While the LCB is correct that a prior conviction may be used as part of the determination of whether a licensee is of good repute, the fact here is that the LCB found that the conviction did not foreclose Licensee from receiving the license in the transfer so that Licensee and, presumably, Licensee's owner, Arthrell, were found to be of good repute then. The LCB argues that further criminal activity at the licensed premises damaged Licensee's reputation. However, the trial court properly determined that the two noise incidents and the incidents regarding fighting at the licensed premises were minor. This Court finds that the trial court's determinations were supported by substantial evidence.

Accordingly, this Court affirms.

### ORDER

AND NOW, this 18th day of June, 2013, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is affirmed.