# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re:                                              :
Appeal of Hotel Liquor License                      :
#H-2892                                              :
                                                    :   No.  411 C.D. 2015
                  v.                                 :
                                                    :   Argued:  September 14, 2015
Tabs Entertainment, Inc., T/A Tabs                  :
Tavern and Inn,                                     :
                  Appellant                         :


BEFORE:    HONORABLE BERNARD L. McGINLEY, Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge


OPINION BY
JUDGE McCULLOUGH                                    FILED:  October 8, 2015


        TABS Entertainment, Inc., trading as TABS Tavern and Inn (TABS), appeals from the December 5, 2014 order of the Court of Common Pleas of Monroe County (trial court), which affirmed a decision of the Pennsylvania Liquor Control Board (Board) denying TABS' application to renew a liquor license.

        TABS owns a hotel liquor license for premises it leases at 370 Route 196, Tobyhanna, Monroe County.  Robert Mathews is currently the sole shareholder, president, and manager of TABS.  On June 6, 2012, Mathews purchased one hundred percent of TABS' shares from Jahan Tabatabaie after the bar had been closed for one and a half years.  On February 4, 2013, the Board approved Mathews' application for Notice of Change in Business Structure.  Mathews operated the bar and restaurant under the name "The Doo Wop Lounge," and changed the atmosphere to attract an

older, more "respectful" clientele. On the official license, Mathews was listed as the "owner," the Doo Wop Lounge as the "business name," and TABS as the "licensee." In June 2014, Mathews closed the bar due to ongoing health issues. (Findings of Fact (F.F.) at Nos. 1-4; Reproduced Record (R.R.) at 99a, 140a, 211a-12a.)

By letter dated September 20, 2013, the Board notified TABS that it objected to the renewal of its license for the period effective October 1, 2013. The Board asserted that from October 27, 2008, to February 1, 2010, during Tabatabaie's ownership, TABS received seven citations to which it admitted the violations. Notably, four of the adjudicated citations involved instances where TABS issued checks to vendors to purchase malt or brewed beverages and had insufficient funds to cover the payments. The Board also asserted that TABS, under Mathews' ownership, violated a Conditional Licensing Agreement (CLA) dated April 20, 2011, and signed by Tabatabaie. Specifically, the Board alleged that TABS and Mathews breached the CLA in the following particulars: failure to become compliant with the Responsible Alcohol Management Program (RAMP); failure to maintain and enforce a written barred patrons list; failure to employ at least one security guard to work on the premises on Friday and Saturday nights; and failure to ensure sufficient funds to pay all vendors. (F.F. at Nos. 7-8, 11.)

With respect to the latest-mentioned violation of the CLA, the Board sent Mathews and TABS thirty insufficient fund letters from December 19, 2012, to October 2, 2013, listing instances where TABS issued checks to various distributors for the purchase of malt or brewed beverages and had insufficient funds for payment.[1]

---

[1] The reproduced record does not contain all of the letters, but contains a vast majority of them, and shows that the amounts of the returned checks were as follows: December 10, 2012 ($185.98); December 10, 2012 ($230.78); April 26, 2013 ($223.03); May 21, 2013 ($314.08); May 28, 2013 ($277.56); May 28, 2013 ($333.79); May 29, 2013 ($40.70); June 21, 2013 ($331.04); **(Footnote continued on next page…)**

2

The letters stated that TABS had ten days to make full payment. In turn, TABS failed to remedy six of its dishonored checks by the time of the Board's December 2013 hearing and the matters were referred to the Pennsylvania State Police, Bureau of Liquor Control Enforcement. (F.F. at No. 18.)

A hearing examiner convened a hearing on December 27, 2013. By order dated March 19, 2014, the Board denied TABS' application to renew its liquor license. When TABS filed an appeal to the trial court, the Board issued an opinion in support of its order. (R.R. at 153a-83a.)

Before the trial court, the Board introduced into evidence various documents, including the notes of testimony from the hearing, exhibits submitted to the hearing examiner, and the Board's opinion. Mathews testified on behalf of TABS and introduced into evidence documents and letters that he sent to the Board. (Trial court op. at 12.)

In a comprehensive opinion, the trial court detailed the evidence presented in its findings of fact and engaged in a thorough analysis explaining why denial of TABS' application for license renewal was warranted. Particularly, the trial court found as fact that the adjudicated citations, specifically those related to insufficient funds, were part of TABS' history as licensee and that Mathews was bound by this history when he purchased TABS. The trial court further found that

---

**(continued…)**

June 25, 2013 ($440.96); June 28, 2013 ($234.63); July 5, 2013 ($294.25); July 5, 2013 ($380.37); July 11, 2013 ($559.79); July 19, 2013 ($557.76); July 26, 2013 ($362.22); August 6, 2013 ($638.97); August 6, 2013 ($811.36); August 19, 2013 ($435.98); August 20, 2013 ($591.23); August 27, 2013 ($546.20); August 30, 2013 ($468.17); September 4, 2013 ($522.95); September 5, 2013 ($696.84); September 6, 2013 ($460.25). (R.R. at 102a-24a.)

Mathews violated the CLA's requirement that the establishment maintain a barred patrons list and also its requirement that security personnel wear clothing identifying them as security. Finally, the trial court found that Mathews violated two other conditions of the CLA: he failed to obtain proper RAMP certification and failed, on numerous occasions, to ensure that sufficient funds were available to pay vendors. (Trial court op. at 16-19.) Based on these findings, the trial court determined that the above-mentioned adjudicated citations and breaches of the CLA were sufficient to support nonrenewal and that Mathews failed to take adequate corrective measures. (Trial court op. at 12-20.)

Upon our independent review, we conclude that the trial court's findings are supported by substantial evidence and that its legal conclusion is free from error. *See* Section 470(a) of the Liquor Code (Code),[2] 47 P.S. §4-470(a) (stating that breach of a CLA "will be sufficient cause. . . for the nonrenewal of the license"); *St. Nicholas Greek Catholic Russian Aid Society v. Pennsylvania Liquor Control Board*, 41 A.3d 953, 959-60 (Pa. Cmwlth. 2012) (stating that "even a single past citation or Code violation is sufficient to support a decision refusing to renew a license."). *See also Pennsylvania Liquor Control Board v. Bartosh*, 730 A.2d 1029, 1033 (Pa. Cmwlth. 1999) ("This Court has consistently held that regardless of when they occur the [Board or the trial court] may consider all code violations committed by a licensee in determining whether to renew a liquor license.").

Of particular significance are the facts that TABS has four adjudicated citations for failing to have sufficient funds to pay vendors for malt or brewed beverages; TABS entered into a CLA, promising to have sufficient funds to pay all

---

[2] Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. §§1-101—10-1001.

4

vendors; and that TABS, while operating under Mathews' ownership, violated the CLA on thirty occasions by having insufficient funds to pay for malt or brewed beverages. (Trial court op. at 18-19.) *See St. Nicholas*, 41 A.3d at 956 (stating that a trial court may consider a licensee's entire history to determine whether there is a discernable pattern of violations).

The trial court's analysis was thorough and legally correct. We discuss the issues that TABS raises in this appeal.

"Our review in a liquor license renewal case is limited to a determination of whether the trial court's findings of fact are supported by substantial evidence, whether it abused its discretion, or whether it committed an error of law." *St. Nicholas*, 41 A.3d at 954 n.1. On appeal to this Court, TABS advances, in a cursory fashion, six arguments in support of its chief contention that the trial court abused its discretion in not renewing TABS' liquor license.

When a party appeals the decision of the Board, the trial court hears the appeal *de novo* and makes its own findings of fact and conclusions of law. The trial court must receive the record of the proceedings before the Board, if it is offered, and is permitted to take additional evidence. *Todd's By The Bridge, Inc. v. Pennsylvania Liquor Control Board*, 74 A.3d 287, 295-96 (Pa. Cmwlth. 2013). As the ultimate fact-finder, the trial court is empowered to determine the weight and credibility of the evidence, resolve conflicts in the evidence, and is free to reject even uncontradicted testimony. *See St. Nicholas*, 41 A.3d at 960; *Two Sophia's, Inc. v. Pennsylvania Liquor Control Board*, 799 A.2d 917, 922 (Pa. Cmwlth. 2002).

First, TABS asserts that the trial court erred in considering TABS' seven adjudicated citations, contending that "very little, if any, weight should be given to this history, since ownership of TABS has changed and at the time of the hearing, no

5

citations had been adjudicated against TABS during the period of the new ownership." (TABS' brief at 16-17.)

However, it is well-established that in determining whether to renew a liquor license, the trial court may consider all citations, regardless of when they occurred, *Bartosh*, 730 A.2d at 1033, and the trial court has exclusive authority over the weight it assigns to the evidence. *See St. Nicholas*, 41 A.3d at 960; *Two Sophia's, Inc.*, 799 A.2d at 922. Because TABS' argument merely challenges the weight the trial court provided to evidence which is properly considered in liquor license renewal matters, it must fail. In any event, it is apparent from the trial court's opinion that the trial court placed relatively minor weight on the adjudicated citations and was predominately concerned with TABS' violations of the CLA while Mathews was the owner. (*See* Trial court op. at 16-19.)

Moreover, as the trial court observed, the transaction between Tabatabaie and Mathews effectuated a change of ownership only – as opposed to transferring the license to a new entity and at a new location. Consequently, Mathews was bound by the terms of the CLA even though it was signed by Tabatabaie. (Trial court op. at 16-17.) *See* R.R. at 92a (the CLA) ("Failure to adhere to this Agreement may result in citation(s) by the Bureau, and/or nonrenewal of this license by the Board. These terms will remain in effect both on the license and on the premises unless and until a subsequent agreement is reached with the Board rescinding these restrictions or until the license is transferred to a new owner for use at a new location."); *Derry Street Pub, Inc. v. Pennsylvania State Police*, 111 A.3d 1240, 1248-49 (Pa. Cmwlth. 2015) ("We interpret the CLA's express language to mean that it remains in effect unless and until a subsequent agreement or a grant of rescission by the Board"); *Todd's By The Bridge*, 74 A.3d at 291 (reflecting the

6

Board's conclusion that a new owner is bound by the terms of a CLA entered into by a prior owner). Nonetheless, we note, as did the trial court, that Mathews could have petitioned the Board to alter the terms of the CLA based upon the changes he brought to the atmosphere and clientele of his bar. (Trial court op. at 17.)

Second, TABS contends that the trial court erred in finding that TABS contravened the CLA's requirement that TABS maintain a written barred patrons list. TABS asserts that Mathews did not have any barred patrons during his ownership and, thus, there were no names to put on the list. The trial court ably disposed of this argument:

> [TABS] did not meet the CLA's requirement that the establishment maintain a barred patrons list. [Mathews] stated in both the [Board] hearing in December 2013 and in the hearing in June 2014 that he did not keep a barred patrons list because his business, "The Doo Wop Lounge," did not have any barred patrons. However, [Mathews] did not ask [Tabatabaie] if there had been a barred patrons list from the previous business, even though [Mathews] was "well aware" of the previous business's reputation and violent patrons. [Mathews'] problem here is that he did not technically comply with the CLA. It appears that under his management, troublesome patrons stayed away, so he had no one to add to the "barred patrons list." However, in compliance with the CLA, he should have maintained such a list, including people who had been violent on or about the premises in the past. It was not unreasonable for the Board to require this safety precaution, considering the bar's history and the possibility that violent patrons might return.

(Trial court op. at 16; *see also* F.F. at No. 27.)

Given the trial court's findings and analysis, TABS' argument merely seeks to excuse its non-compliance with the CLA and contests the weight to be afforded to the evidence, which is a matter exclusively reserved to the trial court.

Third, TABS argues that it had security personnel at the premises, but admits that it did not comply with the CLA's requirement that its security personnel be identifiable by clothing. TABS maintains that it did not require its security personnel to wear such attire because it "would scare off the new clientele" and make them "believe that something was wrong." (TABS' brief at 17.) Fourth, TABS admits that it did not complete the final step of RAMP certification, *i.e.* the filing of an affidavit, in violation of the CLA, but maintains that this error could have been easily corrected. On this basis, TABS contends that these two breaches of the CLA were *de minimis*.

Again, TABS' arguments pertain to the trial court's determinations regarding the weight of the evidence. The evidence established that TABS breached the CLA with respect to security attire and RAMP certification. Accordingly, the trial court acted within its discretion in affording weight to TABS' noncompliance with the CLA in these regards.

Fifth, TABS asserts that the trial court should not have considered the thirty letters from the Board notifying Mathews that TABS had checks returned for insufficient funds. TABS claims that this evidence was irrelevant because the letters did not result in an adjudicated citation.

We disagree. The letters established that TABS breached the CLA's requirement that it have sufficient funds to pay all vendors. *See Derry Street Pub, Inc.*, 111 A.3d at 1255 (reiterating that breach of a CLA "will be sufficient cause . . . for the nonrenewal of the license") (quoting section 470(a) of the Code). Once more, the trial court was free to consider this evidence and afford it evidentiary weight. We note that Mathews' repeated failure to issue honorable checks was a predominate

8

factor in the trial court's decision to uphold the denial of TABS' renewal application. As the trial court explained:

> Between December 19, 2012, and October 2, 2013, the Board sent [Mathews] a total of 30 letters concerning checks returned for insufficient funds. As Licensee had citations pertaining to insufficient funds in the past, this issue was detailed in the CLA. These letters were all sent after [Mathews'] purchase of the shares, and the sheer number of them indicates that this was a consistent problem during the entirety of [Mathews'] management.

(Trial court op. at 18-19.)

Sixth, and finally, TABS contends that the trial court "failed to consider or did not give proper weight to . . . the corrective measures TABS accomplished after [Mathews] became the owner," *i.e.*, his change to the bar's atmosphere and clientele. (TABS' brief at 18.)

To the contrary, the trial court expressly acknowledged Mathews' "good intentions" and "successful" changes to TABS "to attract a law-abiding crowd," but nevertheless found that this evidence was outweighed by TABS' citations, and, more importantly, the numerous violations of the CLA that occurred while TABS was under Mathew's ownership. (Trial court op. at 19-20.) As the fact-finder, the trial court acted within its discretion in making this determination.

After a thorough review of the record, the briefs of the parties, the applicable law, and the exhaustive and well-reasoned opinion of the trial court, we conclude that there is no merit to TABS' appellate issues, which simply attack the trial court's determinations of evidentiary weight. Accordingly, we affirm.

 

_____
PATRICIA A. McCULLOUGH, Judge

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re:                                              :
Appeal of Hotel Liquor License                      :
#H-2892                                              :
                                                    :    No.  411 C.D. 2015
                        v.                           :
                                                    :
Tabs Entertainment, Inc., T/A Tabs                  :
Tavern and Inn,                                     :
                        Appellant                   :

## *ORDER*

AND NOW, this 8th day of October, 2015, the December 5, 2014 order of the Court of Common Pleas of Monroe County is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge