IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Police, Bureau : 
of Liquor Control Enforcement, : 
                 Appellant : 
           :    Nos. 282 & 284 C.D. 2020 
           v. : 
           :    Submitted: June 10, 2021 
Wood Brothers Bar, Inc. : 

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge 
                HONORABLE ANNE E. COVEY, Judge 
                HONORABLE CHRISTINE FIZZANO CANNON, Judge 

***OPINION NOT REPORTED***

MEMORANDUM OPINION 
BY JUDGE McCULLOUGH                     FILED: July 15, 2021 

        The Pennsylvania State Police, Bureau of Liquor Control Enforcement (Bureau), appeals from the February 5, 2020 order of the Court of Common Pleas of Philadelphia County (trial court) that sustained the appeal of Wood Brothers Bar, Inc. (Licensee) and reversed the decision of the Pennsylvania Liquor Control Board (Board), affirming the determination of an Administrative Law Judge (ALJ). In her decision, the ALJ adjudicated two citations charging Licensee with two separate violations of section 493(34) of the Liquor Code,[1] 47 P.S. § 4-493(34), which mandates restrictions on amplified music at liquor-licensed premises,[2] and imposed a $350.00

---

[1] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§1-101 - 10-1001.

[2] In relevant part, section 493(34) of the Liquor Code states that "a licensee may not use or permit to be used inside or outside of the licensed premises a loudspeaker or similar device whereby **(Footnote continued on next page…)**

penalty on one citation (Citation No. 17-0313) and a $400.00 penalty on the other citation (Citation No. 17-0827). Upon review, we vacate and remand for the trial court to issue a decision that contains findings of fact, conclusions of law, and an articulated basis for its disposition.

## Background

The trial court summarized the factual background surrounding and giving rise to the citations as follows:

> On Friday, January 20, 2017, at 11:25 p.m., an officer employed by [the Bureau] arrived in the vicinity of the [Licensee's] property which is located at 200-202 S. 13th Street, Philadelphia, PA, 19107 ("Property") in downtown Philadelphia. In [the Bureau's] brief, [it] note[s] that the officer walked [50] feet north and south of the Property on 13th Street and could still hear the music. At 11:28 p.m., the officer entered the premises and observed that the music was identical to the music [he] heard outside. On Friday, February 3, 2017, at 9:30 p.m., the officer arrived in the vicinity again along with two [] other officers and parked a half-block away from the Property. They maintained outside surveillance until 10:30 p.m. when the doors opened and the officer heard music emanating up to [50] feet away. The two [] other officers entered the premises and confirmed that a disc[]jockey was playing music through the speakers. On March 21, 2017, [the Bureau] issued [] Citation Number 17-0313, in relation to the violations on January 20, 2017, and February 3, 2017.
>
> On Thursday, June 1, 2017, at 10:30 p.m., an officer employed by [the Bureau] arrived at the Property. The officer walked to the front of the Property at 13th and Walnut Streets and observed that while there was no disc[]jockey,

---

the sound of music or other entertainment, or the advertisement thereof, can be heard beyond the licensee's property line[.]" 47 P.S. §4-493(34).

music was emanating from the premises. The officer then walked 165 feet away, around the corner, to Pandora's Lunch Box, another licensed establishment in downtown Philadelphia, and alleged that the music from [Licensee's] establishment could still be heard, from around the block, after which the officer left at 10:45 p.m. On Saturday, June 3, 2017, at 12:05 a.m., an officer arrived at the Property. The officer walked to the front of the Property and noticed all the glass doors were open and that music was being amplified throughout the premises. The officer then walked [75] feet away and noted that the music could still be heard. The officer then spoke with Edward Slusser, the man that was indicated to be in charge of the Property, and notified Mr. Slusser that a citation would be issued. On July 11, 2017, [the Bureau] issued [] Citation Number 17-0827, in relation to violations on June 1, 2017, and June 3, 2017.

(Trial court op. at 1-2.)

On May 9, 2018, the ALJ conducted a hearing, after which she issued findings of fact that were nearly identical to those recited above by the trial court. In addition, the ALJ noted in her decision that the president of Licensee, William Weiss, testified that "the music may have been coming from another establishment, which also plays music," and "described a very active and noisy corridor outside the premises." (ALJ's decision at 4.) More specifically, Weiss "testified that the area from 12th to 13th Streets and Chestnut to Locust Streets is known as Midtown Village, which has [69] licensed establishments and high traffic within a five-block area," "added that there are [20] to [30] businesses licensed to play music," and "stated [that] Licensee uses its own decibel reader every night to gauge its noise level." (Board's decision at 8.) Nonetheless, the ALJ found "the evidence as set forth by the Bureau officers [was] sufficient to establish that Licensee violated the Liquor Code in that amplified music was coming from Licensee's premises and that the music could be heard past the property line of the licensed establishment." (ALJ's decision at 4.) Accordingly, the

3

ALJ determined that the Bureau proved that Licensee violated section 493(34) of the Liquor Code on two occasions and imposed a penalty totaling $750.00.

Licensee then appealed to the Board, primarily arguing that the testimony of the Bureau's officers was not credible. In support, Licensee pointed to the testimony of Weiss and argued, *inter alia*, "that the [Property] is located at one of the busiest commercial corridors in Philadelphia with numerous licensed and unlicensed establishments located within [1] block of the licensed premises" and "that at least [4] of the other establishments play amplified music on a nightly basis into the evening hours, and each of these establishments is located within 300 feet of the licensed premises." (Board's decision at 3.) Thus, according to Licensee, "the Bureau wrongfully charged Licensee with noise violations" because "it was the constant loud music emanating from another licensed establishment located less than 100 feet away from the [Property], along with other businesses playing loud music, that created the atmosphere of loud music and noise during the Bureau's investigation." *Id.* at 3-4. Further, Licensee averred that "there was an absence of extrinsic evidence offered by the Bureau to verify the existence of loud music emanating from the [Property] when Licensee has often used decibel meter readings to verify that its music is played at an acceptable level during all hours of operation," and "decibel meter readings for another licensed establishment located less than 100 feet away [were] much higher." *Id.* at 4.

In response, the Bureau asserted that the credible testimony of the Bureau's officers constituted substantial evidence to support the ALJ's findings of fact and that those findings supported her legal conclusion that Licensee violated section 493(34) of the Liquor Code.

In its decision, the Board recounted the testimony of the Bureau's officers and the testimony of Weiss and rejected Licensee's argument that the Bureau's

4

witnesses were not credible. In so doing, the Board reiterated that "[a]s fact[]finder, the ALJ [had] the exclusive right to resolve conflicts in the evidence, make credibility determinations, and assign evidentiary weight." (Board's decision at 8.) Concluding that it could not overturn the ALJ's credibility determinations, the Board found that the testimony of the Bureau's officers constituted "substantial evidence . . . for the ALJ to find that Licensee permitted noise to be heard beyond its property line, in violation of section 493(34) of the Liquor Code." *Id.* Therefore, the Board affirmed the ALJ's decision sustaining the citations.

Thereafter, Licensee filed an appeal to the trial court, and the parties filed briefs in support of their respective positions. At a hearing on February 5, 2020, the trial court granted the Bureau's motion to incorporate the testimony and exhibits that were presented to the ALJ. The trial court also entertained oral argument from the parties' counsel. In short, Licensee asserted that the testimony of the Bureau's officers was not credible for the reasons set forth above. Countering, the Bureau argued that it had adduced sufficient evidence to sustain the citations and establish that Licensee violated section 493(34) of the Liquor Code. Following the hearing, by order dated February 5, 2020, the trial court sustained Licensee's appeal and reversed the decision of the Board. In this order, the trial court did not provide any rationale explaining the basis for its decision.

On March 4, 2020, the Bureau filed an appeal to this Court. On March 6, 2020, the trial court ordered the Bureau to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure (Pa.R.A.P.) 1925(b). The Bureau complied, and the trial court issued an opinion in accordance with Pa.R.A.P. 1925(a). Significantly, in this opinion, the trial court acknowledged that it was conducting *de novo* review of the case. However, the trial court did not

5

issue any explicit findings of fact or conclusions of law. Instead, the trial court, apparently relying on the Bureau's brief, reproduced the facts contained therein, which largely mirrored the facts as recounted by both the ALJ and the Board. Apart from summarizing the testimony of the Bureau's officers and the procedural history of the case, the trial court did not mention or discuss the testimony of Weiss or directly address Licensee's arguments. Nor did the trial court make any credibility determinations with respect to the conflicting testimony and evidence that was submitted as part of the administrative record. Rather, in a cursory fashion, the trial court justified its decision as follows:

> Instantly, this court held a hearing on February 5, 2020, and reviewed the certified record as well as the parties' arguments. After reviewing the information before the court, the court conducted a *de novo* review. Subsequent to a review of the record, this court reversed the Board's decision and granted the appeal, and by doing so did not abuse its discretion or commit an error of law.

(Trial court op. at 4.)

The Bureau then filed an appeal to this Court.

## Discussion

In its brief, the Bureau contends that the trial court abused its discretion because it did not conduct appropriate *de novo* review and failed to issue its own findings of fact or conclusions of law. We agree.

"When a party appeals the decision of the Board, [a court of common pleas] hears the appeal *de novo* and makes its own findings of fact and conclusions of law. The [court of common pleas] must receive the record of the proceedings before the Board, if it is offered, and is permitted to take additional evidence." *Hotel Liquor License #H-2892 v. Tabs Entertainment, Inc.*, 125 A.3d 487, 490 (Pa. Cmwlth. 2015).

6

Notably, even when a court of common pleas receives the same evidence presented to the ALJ and Board, and does not take any additional evidence, the court may reach its own legal conclusions based upon its own findings of fact. *Two Sophia's, Inc. v. Pennsylvania Liquor Control Board*, 799 A.2d 917, 919 (Pa. Cmwlth. 2002). In somewhat different terms, although there may be substantial evidence to support the ALJ and/or the Board's findings, a court of common pleas is free to substitute its discretion for that of the Board and it may modify, sustain, or reverse the Board's decision. *Goodfellas, Inc. v. Pennsylvania Liquor Control Board*, 921 A.2d 559, 566 (Pa. Cmwlth. 2007); *Two Sophia's, Inc.*, 799 A.2d at 921.

The reason a court of common pleas can review the same record as that of the Board yet reach a result that is contrary to the Board stems from the nature of—and role a court plays in—a *de novo* assessment of the evidence. In conducting *de novo* review, a court of common pleas is "the ultimate fact[]finder" and, as such, "is empowered to determine the weight and credibility of the evidence, resolve conflicts in the evidence, and is free to reject even uncontradicted testimony." *Hotel Liquor License #H-2892*, 125 A.3d at 490; *see Bureau of Liquor Control Enforcement v. Big D. Restaurants, LLC*, 149 A.3d 890, 898 n.12 (Pa. Cmwlth. 2016) ("[A]lthough the trial court is required to receive the administrative record below, if offered, it is free to determine the weight and credibility of the evidence."). A court of common pleas may specifically reassess the credibility of the Bureau's and licensee's witnesses and is free to reverse the Board's decision based solely on its own credibility determinations, so long as those credibility determinations are made in accordance with the law. *Pennsylvania Liquor Control Board v. Mignogna*, 548 A.2d 689, 692 (Pa. Cmwlth. 1988); *see Protect PT v. Penn Township Zoning Hearing Board*, 220 A.3d 1174, 1191

7

(Pa. Cmwlth. 2019) ("As the fact[]finder, the trial court may reject even uncontradicted testimony if it finds that testimony lacking in credibility.").

Nonetheless, "*[d]e novo* review contemplates an independent evaluation of the evidence, which has already been presented. In essence, '*de novo* review' means that the reviewing court will reappraise the evidence in the record." *Two Sophia's, Inc.*, 799 A.2d at 922 n.5. As our Supreme Court put it:

> If anything, *de novo* review by the judicial branch assures litigants that [citations] based on violations of the Liquor Code will only be enforced when neutral judicial officers, detached from the [B]ureau charged with the task of monitoring and enforcing the liquor laws of this Commonwealth are satisfied that violations have, in fact, been established.

*Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Cantina Gloria's Lounge, Inc.*, 639 A.2d 14, 18 (Pa. 1994). To summarize the above principles, "an appeal from a decision of the Board . . . require[s] the court of common pleas to conduct a *de novo* review, and in the exercise of its statutory discretion, to make findings and conclusions." *Id.* at 16.

Here, the record indicates that the trial court failed to properly conduct *de novo* review, or, at the very least, is insufficient to confirm that the trial court actually performed *de novo* review. An examination of the trial court's opinion reveals that it simply reproduced the factual and procedural history of this case, as recounted in the Bureau's brief, the ALJ's decision, and/or the Board's decision. However, the trial court did not issue its own findings of fact, or state that it was adopting the findings of fact of the ALJ. The trial court further failed to make conclusions of law. Moreover, the trial court did not engage in any credibility or evidentiary weight determinations and failed to articulate a reasoned basis for its decision to overrule the Board, other than to state that it was overruling the Board. Consequently, it is unclear whether the

8

trial court determined that the evidence was legally insufficient to conclude that Licensee violated section 493(34) of the Liquor Code, or, conversely, that the Bureau failed to submit competent and/or credible evidence to prove that Licensee violated section 493(34) of the Liquor Code.[3]  The net result is that this Court is unable to verify that the trial court, in fact, exercised its statutory discretion and performed an independent appraisal of the evidence, as it is required to do in a *de novo* review.  *See Kirkwood v. Unemployment Compensation Board of Review*, 525 A.2d 841, 844 (Pa. Cmwlth. 1987) (discussing the different standards of appellate review with regard to the sufficiency of the evidence and the credibility of the evidence).[4]  In reaching our

_____

[3] The burden of proof in a citation proceeding for a violation of the Liquor Code is upon the Bureau, and it must prove its case by a preponderance of the evidence.  *Banks Appeal*, 481 A.2d 709, 711 (Pa. Cmwlth. 1984); *In re Omicron Enterprises*, 449 A.2d 857, 859 (Pa. Cmwlth. 1982).

[4] Albeit provided in a decision in the unemployment compensation arena, our analysis in *Kirkwood* is instructive here:

> When . . . the burdened party did present *sufficient* evidence as a matter of law and yet failed to prevail below, we then must determine whether the reason for the adverse determination stems from the factfinder's opinion that the evidence presented was not credible, or, whether instead the factfinder committed an error of law in applying the proper principle of law to the facts presented.  If the latter, we can reverse the agency, even if the factfinder has found the testimony of the burdened party credible, because in such instance the issue is a matter of law for this Court to determine.  In the former instance, however, the approach is different because our scope of review precludes us from making factual findings or credibility determinations.  Moreover, we decline to infer credibility.  Thus, we must scrutinize the adjudication.  If specific credibility determinations appear that support the result of the adjudication, then we may affirm the decision below on the basis that the burdened party failed in his burden to *persuade* the factfinder.  If, however, *specific* credibility determinations do not appear in the factual findings, in the discussion or conclusions, and no other *specific* explanation for the adverse determination appears in the adjudication, then we have no other alternative but to vacate the order below and

**(Footnote continued on next page…)**

conclusion, we note that in other cases where a court of common pleas was obligated to perform *de novo* review, and acted in a fact-finding capacity, this Court has emphasized that "the [] court must state the basis and reasons for its decision." *Aetna Life Insurance Co. v. Montgomery County Board of Assessment Appeals*, 111 A.3d 267, 279 (Pa. Cmwlth. 2015). Such a requirement is essential because it enables an appellate court to ascertain whether the court of common pleas abused its discretion or committed an error of law in rendering its decision. *See Pittman v. Pennsylvania Board of Probation & Parole*, 159 A.3d 466, 474 (Pa. 2017); *Green v. Schuylkill County Board of Assessment Appeals*, 772 A.2d 419, 433 (Pa. 2001). Because we cannot decipher the basis or rationale that the trial court relied upon to reverse the Board, our ability to conduct meaningful appellate review is severely hampered.

In this case, the trial court's opinion "is insufficient for us to perform our appellate review" and "our only recourse is to remand." *Banks Appeal*, 481 A.2d at 711. Accordingly, we vacate the trial court's order and remand in order for the trial court to issue a new opinion that sets forth findings of fact, including credibility determinations, and the reasons for its disposition.

_____
PATRICIA A. McCULLOUGH, Judge

---

remand for specific credibility findings and for an explanation of the agency's decision; otherwise we could not perform our appellate review function.

*Kirkwood*, 525 A.2d at 844 (emphasis in original).

10

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Police, Bureau
of Liquor Control Enforcement,
               Appellant

              v.

Wood Brothers Bar, Inc.

:
:
:
:
:
:
:
:
:

Nos. 282 & 284 C.D. 2020

## ***ORDER***

AND NOW, this 15th day of July, 2021, the February 5, 2020 order of the Court of Common Pleas of Philadelphia County (trial court) is vacated, and the matter is remanded to the trial court to issue a new opinion which sets forth findings of fact, including credibility determinations, and the reasons for its disposition.

       Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge